IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ROBERT M. TAYLOR, III, DEBORAH R. MANGUM, LEONARD K. SWEATMAN, SARAH W. ALEEM, HASSIE ALEXANDER, BETTYE M. ALLEN, CARRIE L. ANDERSON, SHEILA S. ASH, TESSIE B. ATKINS, VERNIE L. ATKINS, MARY H. BARNETT, BEA BELL-THOMPSON, BOBBIE BENNEFIELD, JOYCE BISHOP, DARLENE F. BOYD, MARILYN BRADDY, ANGELA D. BROWN, COLLEEN D. BROWN, DEBORAH S. BROSKE, CYNTHIA E. BYRNES, MARJORIE J. CAIN, PAMELA JONES CANNON, MARY E. CARTER, ROSEMARY A. CARTER, SHARON N. CHAMINEAK, MARY L. CHEEK, CLARA LOU CLARK, JURICE COFER, AVA DENISE CONGER, THEODORE CONNER, DIANA CORDY, JOSIE CRAWFORD, MARYNELL CRAWFORD, CHERYL E. CRISLIP, ROSIE CRYER, VIVIAN DACUS, MARION T. DANIEL, CHERYL B. DAVENPORT, EDMOND DEKETELEARE, MARY HURST DeLONG, MARIANN S. DOLEZAL, GEORGE DAVID DOWD, DIANE EDENFIELD, ANN B. EDWARDS, CARMEN J. ESCARTIN, SUE SAIN ESTES, ARTHUR EVANS, JR., PEGGY LYNN EVANS, WANDA EVANS, CONNIE FAIRCLOTH, ELIZABETH FAISON, KAREN J. FAVORS, DOROTHY FERGUSON, FE FERNANDEZ-GARCIA, HENRY J. FLOWERS, DONNA FORD, DORIS FOREMAN, KAREN FOWLER, BENITA FREY, LULA FAYE FROELICH, EMILY WYNONA BURCH FULLER, EVELYN GAGNON, ROBBI M. GILMORE, DANNY G. GLOVER, REANN GRANTUM, MINNIE GRISSETT-CUMMINGS, HARRIET GULLEDGE, | CIVIL ACTION FILE<br><br>NO. 24CV0019 |

SHARON DIANE GREENE,                        )
BOBBIE JEAN HARRIS, IRIS E. HARRIS,)
PAMELA W. HARRISON, DEBRA J.                )
HAWKES, LINDA HERRON, CAROL                 )
HIERS, LOIS V. HIXON, SUSAN G.              )
HOUSE, KYLE E. HOWELL, JULIE                )
HUGHES, NANCY P. INGLETT,                   )
LORETTA IRBY, DWALA JACKSON,                )
EUNICE W. JOHNSON, JERRY J.                 )
JOHNSON, LINDA B. JOHNSON,                  )
MARTHA F. JOHNSON, ELJENETTE                )
JONES, NAOMI JONES, SUSIE JONES,            )
FLORILEE JOWERS, TERRI KEENER,              )
LILLIE CATHERINE LAMAR,                     )
ELIZABETH ANN LAMB, LAURIE                  )
LANGNER, ALLEN E. LEDBETTER,                )
SANDRA L. LEDBETTER, DORIS A.               )
LEE, DORIS LEWIS, KEN LITKE,                )
PAMELA HENSLEY LONG,                        )
S. T. LOWE, JR., BARBARA K. LUTHER,)
ERNESTINE MACKEY, AMELIA FAYE   )
MADDOX, GWENDOLYN E. MANN,                  )
MAMIE McBRIDE, PAM McCASLIN,                )
GEORGE J. MELLES, SHARON B.                 )
MERRITT, JOHN H. MESSICK, JR.,              )
KAREN MILLER, CAROLYN D. MILLS, )
BESSIE MIMS, LEOLA MIMS, GLORIA )
W. MONROE, PATRICIA A. MOSLEY,              )
LAURA H. MOTES, ANNIE N.                    )
MURRAY, GEORGEANN NELSEN,                   )
DORIS I. NELSON, YVONNE NELSON, )
THELMA OVERSTREET, MARY JUNE    )
OWENS, JOHN R. PEARSON,                     )
ROSAMMA PHILIP, JANET N. PIERCE, )
KATIE POPPELL, ALVERTA KAY                  )
POSS, NANCY G. POWELL, DONALD               )
G. PRELESNIK, GENEVA J. PRINCE,             )
DIANA S. REES, TONI WARR REESE,             )
GRACE P. RILEY, GLORIA SANDERS,             )
DEEDEE SEALS, SHIRLEY SELF,                 )
BARBARA A. SIKES, BETTY SMITH,              )
MARTHA G. SMITH, ROBBIN                     )
SHARON SMITH, VICKI SMITH-                  )
KOHLER, REBECCA SNELLING,                   )
ARVID SODERBERG, ROBERT E.                  )
STANFORD, BERTHA STEVENS-                   )
DRAIDFORT, HAROLD W. STEWART,   )

```
JR., FRANCES STOKES, PATRICIA        )
ABNEY STOKES, EULA O. STONE,         )
SYBIL SURRETT, CARMEN LUCIA          )
TAKACS, CLARISE TARVER,              )
JEANETTE THOMAS, TOM THOMAS,         )
JACQUELYN C. TYLER, MARY WADE,       )
DONNA W. WALKER, BARBARA             )
WALTON, CAROLYN WASHINGTON,          )
GeJUAN C. WATERS, DAVID L.           )
WHEELER, JULIA T. WHEELER,           )
CHARLES H. WHITE, DIANE J. WHITE,    )
SHARON G. WHITE, DEBORAH             )
WHITFIELD, DELORES WHITFIELD,        )
CAROLYN WILLIAMS, MARY WILSON,       )
DEBRA WISE, JAMES WONG, JOY          )
WORKMAN, GEORGE YODER,               )
                                     )
            PLAINTIFFS,              )
                                     )
VS.                                  )
                                     )
UNIVERSITY HEALTH SERVICES, INC.     )
and PIEDMONT HEALTHCARE, INC.,       )
                                     )
            DEFENDANTS               )
```

## AMENDED AND RECAST COMPLAINT
## FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COME the Plaintiffs named in the above-captioned case and bring this their Amended and Recast Complaint against UNIVERSITY HEALTH SERVICES, INC. and PIEDMONT HEALTHCARE, INC. and, in support thereof, show:

1. That Plaintiffs named above are former employees of Defendant University Health Services, Inc. ("Defendant University Health Services"); were employed with Defendant University Health Services prior to January 1, 2005, and had thirty (30) or more years of continuous service with Defendant University Health Services as employees.

3

2. That Defendant University Health Services entered into a Lease with the Richmond County Hospital Authority, whereby the Hospital Authority leased its assets to Defendant University Health Services in 1984 and began operating the University Hospital in Augusta, Georgia.

3. That Defendant University Health Services has operated the University Hospital in Augusta, Georgia since 1984 and has employed the Plaintiffs named above, as well as other employees.

4. That in March 2022, Defendant Piedmont Healthcare, Inc. ("Defendant Piedmont Healthcare") took over the operations of University Hospital in Augusta, Georgia and assumed certain obligations of Defendant University Health Services, including those contractual obligations set forth herein.

5. That in addition to the Plaintiffs named above, there are other employees who are still employed at Piedmont Healthcare who, like the Plaintiffs named above, were promised Medicare Supplement Insurance through United Healthcare free of charge if they had been employed before January 1, 2005 and had thirty (30) or more years of continuous service. There are over two hundred (200) individuals who are still employed who have been promised this benefit upon retirement. Furthermore, there are at least thirteen (13) individuals aged 60 to 64 years who will be damaged if this benefit does not exist as promised.

6. That additional individuals may join this action in the future as they reach the age of 65 years, have been employed prior to January 1, 2005, and have thirty (30) or more years of continuous service.

7. That as part of their agreements with Defendant University Health Services, each of the Plaintiffs named above were furnished with written documentation in which Defendant University Health Services agreed that if that Plaintiff worked until he/she reached retirement age

and was initially an employee prior to January 1, 2005 and had thirty (30) or more years of continuous service with Defendant University Health Services, then that Plaintiff would, upon reaching the age of 65 years, be furnished for life with a Medicare supplemental insurance policy at no cost – all as shown by Exhibit "A," and other similar documents provided to employees. Defendant University Health Services advertised this as being a hidden salary and this policy was designed for the retention of employees.

8. That the agreements to provide a Medicare supplemental insurance policy free of charge was set forth in various documents included in the written documents furnished to each Plaintiff-employee as part of Defendant University Health Services' retirement benefit booklet.

9. That each of the Plaintiffs named above relied upon the written representations made as part of his/her agreement with Defendant University Health Services that if he/she were initially employed prior to January 1, 2005 and had thirty (30) years of continuous service, once he/she reached the age of 65 years or became Medicare eligible, then a Medicare supplemental policy would be provided by Defendant University Health Services free of charge. Defendant University Health Services referred to this as a "hidden paycheck" and each of these Plaintiffs relied on being able to receive this hidden paycheck once they met the criteria set forth herein.

10. That the agreement was made in part to keep the turnover of employees low since long term employees could have this substantial benefit once they retired.

11. That the agreement Defendant University Health Services made in writing to each of the Plaintiff-employees as set forth on Exhibit "A," is part of the agreements and was a written document accepted and relied upon by each of the Plaintiffs named above in his/her

decision to continue to work for Defendant University Health Services so that he/she would have thirty (30) years of continuous service.

12. That the Defendants have now informed the Plaintiffs named above that this lifetime benefit will not necessarily be effective in the future and that Defendant Piedmont Healthcare takes the position that these benefits are now only being paid by it voluntarily and not pursuant to the promises made to the Plaintiffs that if they continued to work at Defendant University Health Services that this benefit would be paid. This uncertainty makes it difficult for the older Plaintiffs to plan their future – all as shown by a letter sent out by Defendant Piedmont, as shown by Exhibit "B" attached hereto.

13. That based upon information and belief, the Defendants have taken the position that there was no agreement between the Defendants and the Plaintiffs that this benefit would be provided <u>for life</u> of each Plaintiff.

14. That on or about the same time Defendant University Health Services announced that these benefits were not guaranteed as set forth in Exhibit "A," Defendant University Health Services entered into an Executive Restrictive Covenant and Severance Agreement with its Chief Executive Officer, as shown by Exhibit "C" attached hereto, whereby it would pay a severance pay of three (3) years of compensation in excess of $5 million.

15. That despite the fact that Defendant Piedmont Healthcare assumed the contractual obligations of Defendant University Health Services, it refuses to inform the Plaintiffs named above that it will abide by the obligations of Defendant University Health Services and provide the benefit for their lives.

16. That there exists uncertainty as to whether these contractual benefits will continue in the future as promised by Defendant University Health Services.

17. That this uncertainty causes damages to each Plaintiff named above, in that retirement plans for those on a fixed income are difficult to make when they face the uncertainty as to the payment of medical insurance in their older age.

18. That Defendant University Health Services promised to provide each of the Plaintiffs with a free-for-life once they reached age 65 United Healthcare/AARP Medicare Supplement as shown on Exhibit "A".

19. That after making that promise, Defendant University Health Services on October 14, 2020 notified its retirees that they were then offering retirees who were entitled to the United Healthcare/AARP Medicare Supplement an Aetna Medicare Advantage Plan which would replace the United Healthcare/AARP Medicare Supplement as shown by Exhibit "D".

20. That when certain retirees and employees objected, the then-Chief Executive Office of Defendant University Health Services told those employees that if they desired retirees could keep their free United Healthcare/AARP Medicare Supplement.

21. That, despite that promise by the then-Chief Executive Officer of Defendant University Health Services, on November 1, 2020, Defendant University Health Services sent out another letter (Exhibit "D") which provided:

"Just Remember that if you opt out of the new plan for 2021, you will lose

coverage through UH."

22. That of the original 174 named Plaintiffs, 20 have supplemental Medicare coverage through United Healthcare/AARP as shown by Exhibit "F".

23. That six (6) of the 174 original named Plaintiffs are not being provided any free Medicare supplement based upon the following reasons given by University Health Services, those individuals being:

7

a.  Rosemary Carter, who retired early due to medical disability. An agent of University Health Services, Carla James, an insurance technician with Head Capital Insurance Agency, helped her to get medical disability. When Ms. Carter turned 65 she stayed on the Humana Advantage Plan. She should be entitled to elect to be on the United Healthcare plan. Ms. Carter has an actual controversy.

b.  Susie Jones, who continued on the vision plan but not the medical plan. In approximately 2019 to 2021, Carla James, an agent University Health Services employed by Head Capital Insurance Agency told Ms. Jones that she had to continue the medical in order to qualify. When Ms. Jones became age eligible, she was told that she could not receive the supplement since she was only on the Vision Plan. That is not a valid reason and is inconsistent with Exhibit "A". Ms. Jones has an actual controversy.

c.  Sharon Merritt. Records indicated that Ms. Meritt did not have 30 years of continuous service, but Ms. Merritt states that she did have 30 years of continuous service. Ms. Merritt has an actual controversy.

d.  Frances Stokes had dental and vision coverage only and her plan was cancelled due to non-payment. She would qualify under Exhibit "A" and she has an actual controversy.

e.  Patricia Abney Stokes, who did not initially make a payment on her insurance and was turned over to collections. She was required to pay back through collections. Carla James, an agent University Health Services employed by Head Capital Insurance Agency, refused to provide the benefit. Ms. Stokes has an actual controversy.

f.  Delores Whitefield. According to Ms. Carla James, an agent University Health Services employed by Head Capital Insurance Agency, Ms. Whitefield was not in the database, even though she had been in the data base and is qualified and was employed

8

before January 1, 2006 and has 30 or more years of continuous service. Ms. Whitefield has an actual controversy.

The six (6) individuals named above in this paragraph have actual controversies with the Defendants in that they were promised these benefits and have met the qualifications but are being denied these benefits.

24. That of the original 174 named Plaintiffs, ninety-three (93) have coverage through the Aetna Medicare Advantage Plan, but desire to have traditional supplemental Medicare coverage through United Healthcare/AARP and wish to do so during the open enrollment period from October 15, 2024 to December 7, 2024, as shown by Exhibit "G".

25. That of the original 174 named Plaintiffs, fifty-five (55) have a Medicare Advantage Plan through Aetna Medicare Advantage and wish to keep said coverage or are still unsure of what is the best selection for them as shown by Exhibit "H".

26. That this Court should declare under the Declaratory Judgment Act that the Defendants cannot terminate the contract that they have with each of the Plaintiffs named above and that both Defendants are obligated to pay these benefits for the life of each Plaintiff as selected by each Plaintiff as shown on Exhibit "F", "G" and "H" and that those six (6) individuals set forth in paragraph 23 above should be provided a free for life Medicare supplement policy.

27. That prior to the purchase of University Health by Piedmont Health, studies were conducted of University Health and Piedmont Health by Mercer which showed this liability, which study indicated that by Piedmont Health's switching employees to the Aetna Medicare Advantage Plan Piedmont would save University Health approximately $11.9 million. *See,* Exhibit "I", p. 5.

28. That Mercer prepared for University Health a Data Assumption and Method which showed that University had a post benefit plan obligation and that there were as of January

1, 2021, some 346 individuals who were entitled to this free-for-life Medicare supplemental policy all as shown by Exhibit "J".

29. That this Mercer-prepared document showed that this benefit was unfunded once, that the projected cost was $37,980,019, and that this obligation was acknowledged by University Health.

30. That based upon information and belief, Piedmont Health in its due diligence knew that it was assuming this liability.

31. That subsequent thereto, Exhibit "I" shows that moving these individuals to an Aetna Medicare Advantage Plan was designed to reduce this cost by $11,900,000.

32. That the Defendants are acting in bad faith, are being stubbornly litigious, and are causing the Plaintiffs unnecessary trouble and expense.

33. That some Plaintiffs who are electing to stay with the Aetna Health Medicare Advantage Plan may want to change in the future.

34. That Plaintiffs are entitled to attorney's fees under the provisions of O.C.G.A. §13-9-11 due to the bad faith of the Defendants, the fact that the Defendants are being stubbornly litigious, and are causing the Plaintiffs unnecessary trouble and expense.

WHEREFORE, Plaintiffs pray:

(a) That process issue requiring each Defendant to answer this complaint;

(b) That the Court issue a declaratory judgment declaring that the Defendants and their successors and assigns are required to honor the terms and provisions of the agreements attached hereto and marked Exhibit "A" and to provide for the Plaintiffs named above the Medicare supplement benefit policies free of charge as was agreed for each of their lives; with the Plaintiffs set forth on Exhibit "F" being allowed to retain their Medicare supplement thorough

United Healthcare/AARP free for life, the Plaintiffs set forth on Exhibit "G" being allowed to change their coverage so that it is provided free of charge thorough United Healthcare/AARP free for life,; the Plaintiffs listed on Exhibit "H" being allowed to retain their Aetna Medicare Advantage Plan free for life; and that those individuals listed in paragraph 6 be given free for life Medicare supplement policies.

(c) That all costs of these proceedings, including Plaintiffs' attorney's fees, be paid by the Defendants;

(d) That Plaintiffs have such other and further relief as is just and equitable.

This 18th day of June, 2024.

/s/ *John B. Long*
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

/s/ *Thomas W. Tucker*
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs

OF COUNSEL:

TUCKER LONG, P.C.
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA  30903
(706) 722-0771
(706) 722-7028 Fax
jlong@tuckerlong.com
ttucker@tuckerlong.com

## CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing *Amended and Recast Complaint* was filed with the Clerk of Court in accordance with ECF rules using the CM/ECF system and was served electronically upon counsel for the other parties:

Emily E. Friedman, Esq.
Colin D. Delaney, Esq.
Smith Gambrell & Russell, LLP
1105 W. Peachtree Street, NE
Suite 1000
Atlanta, GA  30309
ewasmuth@sgrlaw.com
cdelaney@sgrlaw.com


Troy A. Lanier, Esq.
Troy Lanier Law
430 Ellis Street
Augusta, GA 30901
tlanier@tlanier.law

This 18th day of June, 2024.

/s/John B. Long
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200