IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ROBERT M. TAYLOR, III, et al.,    *
                                  *
                                  *
          Plaintiffs,             *
                                  *
              v.                  *          CV 124-019
                                  *
UNIVERSITY HEALTH SERVICES,       *
INC. and PIEDMONT HEALTHCARE,     *
INC.,                             *
                                  *
          Defendants.             *
                                  *
                        _____

               O R D E R
                        _____

     Before the Court is Plaintiffs' motion to remand.   (Doc. 6.)

For the following reasons, Plaintiffs' motion is **DENIED**.


                      I. **BACKGROUND**

     Plaintiffs are former employees of Defendant University

Health Services, Inc. ("UHS").   (Doc. 1-1, at 5.)   Each Plaintiff

claims an agreement with UHS (the "Agreement") that upon reaching

age sixty-five, UHS would furnish them a free Medicare supplemental

insurance policy for the rest of their lives (the "Alleged

Benefit") if they: (1) were employed by UHS prior to January 1,

2005; (2) had thirty or more years of continuous service; and (3)

worked until they reached retirement age.[1]   (Id. at 6-7.)   According

_____

[1] The Court refers to the listed criteria as the "Eligibility Criteria" and the
individuals that satisfy those criteria as "Qualifying Individuals."

to Plaintiffs, UHS referred to the Alleged Benefit as a "hidden paycheck," designed to retain employees, and the written documents describing the Alleged Benefit were provided to each Plaintiff as part of UHS's retirement benefit booklet. (Id.)

Plaintiffs claim that in March 2022 Defendant Piedmont Healthcare, Inc. ("Piedmont") "took over the operations of [UHS]" and assumed certain obligations, including its contractual obligation to provide Plaintiffs the Alleged Benefit. (Id. at 6.) Plaintiffs brought suit because, although they are Qualifying Individuals who meet the Eligibility Criteria under the Agreement and are thus entitled to the Alleged Benefit, Defendants have not upheld their end of the bargain. (Id. at 7-8.) However, Plaintiffs' allegations about how Defendants have not honored the Agreement have changed from the first time Defendants removed this case to now.

When Defendants first removed, Plaintiffs' original complaint alleged Defendants were providing Plaintiffs the Alleged Benefit "voluntarily," not because they were under any contractual obligation to do so. (Id.) Plaintiffs alleged this created "uncertainty" about whether Defendants would continue to provide the Alleged Benefit in the future, so they brought this lawsuit seeking a declaratory judgment requiring Defendants to "honor the terms and provisions" of their agreement. (Id. at 8-9.)

Attached to Plaintiffs' original complaint, however, was a letter from Piedmont to certain Qualifying Individuals, "following up on prior communications about the [Alleged Benefit]." (Id. at 24.) In the letter, Piedmont states it continues to offer Qualifying Individuals the Alleged Benefit and does not plan to change course. (Id.) Based on this, the Court held Plaintiffs had not suffered an injury-in-fact and thus lacked Article III standing. Taylor v. Univ. Health Servs., Inc. (hereinafter, Taylor I), No. CV 123-047, Doc. 36, at 6 (S.D. Ga. Apr. 19, 2023). Accordingly, the Court remanded the case to the Superior Court of Richmond County. Id. at 8.

Upon returning to state court, Defendants filed a motion to dismiss, arguing, in part, that Plaintiffs lacked standing to pursue their claims there as well. (Doc. 1, ¶ 4; Doc. 1-2, at 48-66.) However, in response to Defendants' motion to dismiss, Plaintiffs argued they suffered a cognizable injury. (Doc. 1-2, at 71.) Specifically, Plaintiffs provided:

> The benefits that were agreed to be provided were Medicare Supplemental Benefits for traditional Medicare [(the "United Healthcare Plan")] and the Defendants, rather than live up to that obligation, have sought to, and have told individuals that they had to sign up for Medicare Advantage Plans [(the "Aetna Plan")] at a savings to the Defendants, but a cost to the Plaintiffs by making them join networks or have a PPO type of insurance.

(Id.) In other words, Plaintiffs assert Defendants breached their Agreement because they "tried to avoid their contractual

3

obligations by converting these individuals to a product that is not as good as what [UHS] agreed to provide for them." (Id. at 75.)[2]  Based on the New Allegation, Defendants removed again on February 16, 2024. (Doc. 1.)  Plaintiffs filed a motion to remand on February 29, 2024, which Defendants oppose. (Docs. 6, 13.)

Given the Court's holding in Taylor I, the Court held a status conference on May 16, 2024 to determine whether Plaintiffs had standing. (Docs. 29, 30.)  Based on Plaintiffs' counsel's representations, the Court concluded at least one Plaintiff has Article III standing and took Plaintiffs' motion to remand under advisement. (Doc. 30, at 6-7, 10; Doc. 1-1, at 9 (seeking only declaratory relief)); Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 434 (2017) ("[W]hen there are multiple plaintiffs[, a]t least one plaintiff must have standing to seek each form of relief requested in the complaint.").

Furthermore, at the status conference, Plaintiffs' counsel orally moved for leave to amend to join additional party plaintiffs. (Doc. 30, at 10-11.)  The Court granted the motion and ordered Plaintiffs' counsel to file an amended complaint within forty-five days. (Id. at 11.)  Plaintiffs timely filed an amended complaint on June 18, 2024. (Doc. 32.)[3]

---

[2] The Court refers to this claim as the "New Allegation."
[3] Plaintiffs also filed a motion to amend contemporaneously with their amended complaint, wherein they seek to add forty-one additional party plaintiffs. (Doc. 31.)  Because Plaintiffs made the same motion orally at the status conference, which the Court granted, and then timely filed their amended

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, a defendant may only remove an action from state court if the federal court would possess original jurisdiction over the subject matter. 28 U.S.C. § 1441(a).

Federal district courts have jurisdiction over all civil actions: (1) "arising under the Constitution, laws, or treaties of the United States"; and (2) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. §§ 1331, 1332. On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Removal jurisdiction is construed narrowly with all doubts resolved in favor of remand. Mann v. Unum Life Ins. Co. of Am., 505 F. App'x 854, 856 (11th Cir. 2013). In evaluating a motion to remand, the Court makes its "determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition

---

complaint pursuant to the Court's instructions, Plaintiffs' motion to amend (Doc. 31) is **DENIED AS MOOT**. (Doc. 30, at 10-12; Doc. 32.)

transcripts submitted by the parties." <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted).

### III. DISCUSSION

Plaintiffs move the Court to remand this case for two reasons: (1) Defendants' second removal was untimely; and (2) the Court lacks subject-matter jurisdiction over their claim. (Doc. 6.) The Court addresses each argument in turn.

**A. Timeliness of Removal**

Plaintiffs argue the Court should remand the case because Defendants' removal was untimely. (Doc. 6, ¶¶ 8-11; Doc. 6-1, at 2-3; Doc. 18, at 4; Doc. 25, at 1-3.) Plaintiffs contend: (1) the January 24, 2024 affidavit of Plaintiff Robert M. Taylor, III (the "Taylor Affidavit") cannot provide a basis for removal because it is not a pleading; and (2) the Taylor Affidavit is not "other paper" that can be used to show changed circumstances under 28 U.S.C. § 1446(b)(3) because the New Allegation it describes has been a part of this case all along, so Defendants cannot rely on it to support removal now since they did not do so the first time.[4] (Doc. 6, ¶ 8; Doc. 6-1, at 2-3.) Defendants argue: (1) the fact

---

[4] Defendants interpret Plaintiffs' motion to remand to argue "Defendants have no basis for this second removal because they rely exclusively on the . . . Taylor Affidavit." (Doc. 13, at 5.) To the extent Plaintiffs make such an argument, it is clearly baseless because Defendants do not rely solely on the Taylor Affidavit; they also rely on statements Plaintiffs included in their brief in opposition to Defendants' motion to dismiss in the state court. (<u>See</u> Doc. 1, ¶ 5.)

the Taylor Affidavit is not a pleading is inapposite; and (2) the New Allegation did not appear until after the Court remanded the case to state court, so the Taylor Affidavit and Plaintiffs' brief in opposition to Defendants' motion to dismiss in state court can demonstrate changed circumstances under the removal statute. (Doc. 13, at 5-10.)   The Court agrees with Defendants on both counts and finds their second removal proper and timely.

28 U.S.C. § 1446 provides as follows:

> Except [as governed by a subsection not applicable in this case], if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).   Plaintiffs first argument — the Taylor Affidavit cannot support removal because it is not a pleading — is foreclosed by § 1446's text, as it plainly contemplates removal being supported by a "motion, order, or other paper" as well as "an amended pleading."   Id.   Moreover, courts within this Circuit have found removal proper when supported by many different types of documents. See, e.g., Bramlett v. YRC, Inc., No. 1:16-CV-3870, 2016 WL 9330340, at *2 (N.D. Ga. Dec. 7, 2016) (finding a settlement demand supported a second removal); Sibilia v. Makita Corp., 782 F. Supp. 2d 1329, 1331 (M.D. Fla. 2010) (holding the plaintiff's amended responses to requests for admission

7

constituted "other paper" supporting a second removal); Sudduth v. Equitable Life Assurance Soc'y, No. 07-0436, 2007 WL 2460758, at *4 (S.D. Ala. Aug. 27, 2007) (concluding a deposition constituted "other paper" supporting a second removal).  Thus, the fact the Taylor Affidavit is not a pleading is not dispositive of whether it can be used to support Defendants' second removal.

Plaintiffs also argue Defendants' second removal was untimely because neither the Taylor Affidavit nor Plaintiffs' response to Defendants' motion to dismiss is "other paper" that can be used to show changed circumstances under 28 U.S.C. § 1446(b)(3), since the New Allegation has been a part of this case all along.  (Doc. 6, ¶ 8.)  Plaintiffs argue: (1) the New Allegation appeared in another of Plaintiff Taylor's affidavits filed in Taylor I; and (2) Defendants knew what the facts were when Plaintiffs filed this lawsuit.  (Doc. 6, ¶ 10; Doc. 6-1, at 1-2; Doc. 18, at 1-4; Doc. 25, at 2-7.)  Defendants counter that (1) the record in Taylor I was devoid of any papers asserting the New Allegation; (2) even if there were papers in the Taylor I record mentioning the New Allegation, Defendants could not ascertain as much until the Taylor Affidavit and Plaintiffs' response to Defendants' motion to dismiss were filed; and (3) whether Defendants knew of the facts underlying this case from "dealings and materials outside the pleadings that pre-date the [c]omplaint" is irrelevant because

8

removal is based on papers filed with the Court. (Doc. 13, at 7-10; Doc. 21, at 3-8; Doc. 28, at 1-2.)

Ordinarily, a defendant has thirty days after receiving, "through service or otherwise, . . . a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based" to remove the action from state to federal court. 28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable," a defendant may remove within thirty days after receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3). In determining the propriety of removal under § 1446(b), "the court considers the document received by the defendant from the plaintiff — be it the initial complaint or a later received paper — and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007).

The record in Taylor I does not support Plaintiffs' argument that the New Allegation existed and was part of the case at the time of Defendants' first removal. (Doc. 6, ¶ 10; Doc. 18, at 1-4; Doc. 25, at 2-7.) The Court considered the pleadings and all other relevant papers before issuing its decision in Taylor I. See No. CV 123-047, Doc. 36. In these documents, Plaintiffs only

claimed their purported injury was the uncertainty surrounding whether they would continue to be provided free lifetime Medicare benefits, which resulted from Defendants' position they were voluntarily providing those benefits, rather than recognizing their alleged contractual obligation to do so. Taylor I, No. CV 123-047, Doc. 36, at 6. Put differently, the papers filed with the Court in Taylor I did not indicate Defendants breached their alleged contract with Plaintiffs; rather, they indicated Plaintiffs brought the lawsuit attempting to prevent a future breach. Id. As the Court explained, this did not constitute an injury-in-fact sufficient to confer Article III standing because it "show[s] only 'there is at most a "perhaps" or "maybe" chance' Defendants will not provide the Alleged Benefit at some point in the future." Id. (alteration adopted) (quoting Bowen v. First Fam. Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000)).

Two documents Plaintiffs filed in Taylor I mentioned there were two different types of benefits at issue. In Plaintiffs' "Second Supplemental Brief in Opposition to Defendants' Motion to Dismiss," they stated other documents they filed with the Court "set forth the number of individuals who are still covered by the [United Healthcare Plan], as well as the number of individuals who were persuaded to utilize [the Aetna Plan], with substantial saving to [UHS] and to the detriment [of] [Qualifying Individuals]." Taylor I, No. CV 123-047, Doc. 29, at 2. Moreover, in Plaintiff

Taylor's June 27, 2023 affidavit, he averred UHS "sent a letter to the [Qualifying Individuals] who were eligible for [the United Healthcare Plan] encouraging them to sign up for [the Aetna Plan], which was not in the [Qualifying Individuals]' best interests." Taylor I, No. CV 123-047, Doc. 30, at 3.  However, Plaintiffs never stated the conduct constituted a breach of contract.  See id. Docs. 1-1, 8, 9, 10, 11, 20, 21, 22, 29, 30.  Therefore, the Court finds the New Allegation was not a part of the case when Defendants first removed.

Even if the New Allegation was somehow part of the case when Defendants first removed, Defendants still would not be precluded from removing again because the New Allegation was not ascertainable.  The removal statute allows a defendant to remove a case that was not initially removable when the defendant receives "a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained* that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3) (emphasis added). To the extent the statements discussed above could be interpreted as asserting the New Allegation, the assertion was not done unambiguously.  See Lowery, 483 F.3d at 1213 (requiring the document on which removal is based "unambiguously establish federal jurisdiction").  As a result, Defendants' second removal is not untimely or improper even if the New Allegation was present in Taylor I.

Plaintiffs' contention that Defendants' second removal is untimely because they knew the facts underlying the New Allegation before Plaintiffs filed this lawsuit is also unavailing. (Doc. 6-1, at 1-2; Doc. 18, at 1-4; Doc. 25, at 2-7.) While the Eleventh Circuit has not yet addressed the issue, "[a]ll courts of appeals that have addressed whether a court may consider a defendant's pre-litigation knowledge . . . to decide the triggering of the 30-day removal period have held no." Clark v. Unum Life Ins. Co. of Am., 95 F. Supp. 3d 1335, 1354 (M.D. Fla. 2015) (collecting cases). Those courts, as well as other district courts within this Circuit, have adopted a bright-line rule: "a court may look only at the pleading or any *post-litigation* 'other paper' from the plaintiff to decide the triggering of the 30-day removal period." Id. (emphasis added) (citation omitted); see also Sullivan v. Nat'l Gen. Ins. Online, Inc., No. 3:17-CV-1387, 2018 WL 3650115, at *6-8 (M.D. Fla. Apr. 17, 2018); Owoc v. LoanCare, LLC, 524 F. Supp. 3d 1295, 1300-01 (S.D. Fla. 2021) (citations omitted). As one court within this Circuit explained:

> The bright-line rule is based on the language of [§ 1446](b)(3) . . . . "It is axiomatic that a case cannot be removed before its inception. If the . . . paragraph . . . were meant to include as 'other paper' a document received by the defendant months before receipt of the initial pleading, the requirement that the notice of removal 'be filed within thirty days after receipt by the defendant' of the 'other paper' would be nonsensical."

12

> The bright-line rule is also based on a desire to promote judicial efficiency through avoidance of mini trials about what defendants had known or should have known based on facts [they] possessed when [they] received the pleading or other paper and premature removals by risk-averse defendants fearing accidental closure of the 30-day removal period.

Sullivan, 2018 WL 3650115, at *7 (emphasis in original) (citations omitted).

For these reasons, Defendants' second removal is not untimely merely because they knew or should have known the facts underlying the New Allegation before the initiation of litigation. This is especially so where, as here, Plaintiffs' pleadings and other papers are ambiguous as to whether their claims for relief relied on such facts. See id. ("The bright-line rule is further based on a desire to 'discourage evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers.'" (alterations adopted) (citation omitted)).

In sum, the Court found in Taylor I Plaintiffs had not suffered an injury-in-fact because they brought suit due to the mere uncertainty caused by Defendants' position that the Alleged Benefit was being provided voluntarily and not because Defendants were contractually obligated to provide it. No. CV 123-047, Doc. 36, at 6-8. However, the New Allegation indicates Plaintiffs suffered an injury-in-fact when Defendants breached the Agreement by forcing Plaintiffs into the Aetna Plan to obtain the free lifetime Medicare benefit, rather than allowing them to choose the

13

United Healthcare Plan. (Doc. 1-2, at 75, 223, 225.) As explained above, the New Allegation appeared for the first time when Plaintiffs' response to Defendants' motion to dismiss and the Taylor Affidavit were filed on January 26, 2024. (Id. at 68, 221.) Defendants removed this case on February 16, 2024. (Doc. 1.) As a result, Defendants' second removal was timely. See 28 U.S.C. § 1446(b)(3).

## B. Subject-Matter Jurisdiction

In removing this case, Defendants invoked the Court's federal question jurisdiction under 28 U.S.C § 1331, arguing Plaintiffs' claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Doc. 1, at 1.) Plaintiffs move to remand, contending ERISA does not apply, and, even if it does, several exceptions apply. (Doc. 6, at ¶¶ 3-5, 13-17; Doc. 6-1, at 3-7; Doc. 18, at 5-13; Doc. 25, at 1-10.)

"Federal question jurisdiction generally exists only when the plaintiffs' well-pleaded complaint presents issues of federal law." Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011) (citation omitted). Because preemption is ordinarily a defense to a state claim, "it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (citation omitted). However, an exception exists for situations "[w]hen a federal statute wholly

14

displaces [a] state-law cause of action through complete pre-emption." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) (citation omitted). "This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Id. at 207-08 (alteration adopted) (citation and internal quotation omitted).

ERISA is an example of complete preemption. Id. at 208. The preemptive force of ERISA is "so powerful as to displace entirely any state cause of action" for violation of contracts between an employee and employer regarding certain benefits. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7 (2003) (citation omitted). Thus, "[r]egardless of its characterization as a state law matter, a claim will be re-characterized as federal in nature if it seeks relief under ERISA." Lamb, 660 F.3d at 1287 (citation omitted).

The Court applies the two-part test set forth in Davila to determine whether Plaintiffs' state-law claim is preempted by ERISA. Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1345 (11th Cir. 2009). Accordingly, Plaintiffs' breach of contract claim will be preempted by ERISA if: (1) at some point, they could have brought their claim under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B); and (2) no other independent

legal duty supports their claim.  Id. (citing Davila, 542 U.S. at 210).

1. Whether Plaintiffs Could Have Brought Their Claim Under ERISA

Turning to the first prong of the Davila test, the Court must determine whether Plaintiffs could have brought their claim under ERISA's civil enforcement provision.  See Anthem Health Plans, 591 F.3d at 1345 (citing Davila, 542 U.S. at 210).  This prong is satisfied if: (1) Plaintiffs' claim falls within ERISA's scope; and (2) Plaintiffs have standing to sue under ERISA.  Id. at 1350 (citing Davila, 542 U.S. at 211-12; Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 947-49 (9th Cir. 2009)).

a. *Whether Plaintiffs' Claim Falls Under ERISA*

Participants or beneficiaries may bring an action to recover benefits due under an ERISA plan, enforce their rights, or clarify their right to future benefits.  29 U.S.C. § 1132(a)(1)(B).  For purposes of ERISA, an "employee benefit plan" or "plan" means an "employee welfare benefit plan[,] an employee pension benefit plan[,] or a plan which is both."  29 U.S.C. § 1002(3).

At issue here is whether the Agreement constitutes an "employee welfare benefit plan," not an "employee pension benefit plan."  (See Doc. 13, at 11; Doc. 18, at 6-7); 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is: (1) any plan, fund, or program; (2) established or maintained; (3) by an employer; (4)

16

for the purpose of providing benefits; (5) to participants or their beneficiaries.  <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1370 (11th Cir. 1982) (citing 29 U.S.C. § 1002(1)).  But even if the Agreement is an "employee welfare benefit plan," it still may not be preempted by ERISA if it falls under certain exemptions.  <u>See Dist. of Columbia v. Greater Wash. Bd. of Trade</u>, 506 U.S. 125, 127 (1992) ("Subject to certain exemptions, ERISA applies generally to all employee benefit plans sponsored by an employer or employee organization." (citing 29 U.S.C. § 1003(a))).

Defendants argue the Agreement meets the definition of an "employee welfare benefit plan" such that Plaintiffs' breach of contract claim falls within ERISA's scope.  (Doc. 13, at 13.) Plaintiffs disagree.  (Doc. 6, ¶ 4; Doc. 6-1, at 3-4; Doc. 18, at 10-11.)  But even if the Agreement constitutes such a plan, Plaintiffs argue their claims are still not preempted by ERISA because the Agreement is subject to several exemptions.  (Doc. 6, ¶¶ 3-5, 13-17; Doc. 6-1, at 3-5; Doc. 18, at 5-12; Doc. 25, at 7-10.)  The Court first considers whether the Agreement satisfies the <u>Donovan</u> test and thereby constitutes an "employee welfare benefit plan" before addressing whether an exemption applies.

i. Whether the Agreement Constitutes an Employee Welfare Benefit Plan

The Agreement satisfies the first prong of the <u>Donovan</u> test. <u>See</u> 688 F.2d at 1371 (citing 29 U.S.C. § 1002(1)).  The Agreement

will be deemed a "plan, fund, or program" "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Id. at 1373.

Plaintiffs allege they each entered a written agreement with UHS that, when they turned sixty-five, UHS would provide them a free Medicare supplement insurance policy for the rest of their lives, so long as they met the following three criteria: (1) they were employed by UHS before January 1, 2005; (2) they had at least thirty years of continuous service; and (3) they worked until they reached retirement age. (Doc. 1-1, at 6-7.) Moreover, the documents Plaintiffs contend create the written agreement between them and Defendants establish Defendants were to provide Qualifying Individuals the requisite election paperwork to enroll in the program, then Defendants would pay the premium for the Alleged Benefit directly to the relevant insurance companies. (Id. at 11-17.) Based on the foregoing, the Court finds a reasonable person can ascertain: (1) the intended benefits are medical benefits for Qualifying Individuals in the form of Medicare supplement policies; (2) the class of beneficiaries is Qualifying Individuals who meet the Eligibility Criteria; (3) the source of financing is Defendants' general assets, since Defendants were paying premiums directly to the relevant insurance companies; and (4) the procedure for receiving the benefits required Defendants

to provide Qualifying Individuals with the requisite election paperwork to enroll in the program and, after they enrolled, Defendants would pay the premium directly to the relevant insurance companies.  See Donovan, 688 F.2d at 1373.

Plaintiffs argue the Agreement is not a "plan, fund, or program" because: (1) to their knowledge, Defendants did not include the Alleged Benefit in the DL 5500 forms[5] they filed; and (2) Defendants are paying for the Alleged Benefit out of their general assets rather than setting aside a separate fund.  (Doc. 6, ¶ 4; Doc. 6-1, at 3-4; Doc. 18, at 10-11.)  In response, Defendants argue Plaintiffs' first argument is factually incorrect, and, regardless, neither argument is dispositive of whether the Agreement is an ERISA plan.  (Doc. 13, at 13 n.4, 19 n.9; Doc. 21, at 9 n.3, 12-14.)

As for Plaintiffs' first argument, the record indicates Defendants *did* report the Alleged Benefit on their DL 5500 forms.  (Doc. 14, ¶ 17; Doc. 14-1.)  As for their second argument, Plaintiffs correctly state an employer using its general assets to fund a purported ERISA plan is a factor weighing against finding the arrangement is an ERISA plan.  (Doc. 6, ¶ 4 (citing Stern v. Int'l Bus. Machines Corp., 326 F.3d 1367, 1372-73 (11th Cir. 2003))

---

[5] DL 5500 forms are disclosure documents for participants and beneficiaries of employee benefit plans that employers file to satisfy ERISA's annual reporting requirements.  See Form 5500 Series, U.S. Dep't of Lab., https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500 (last visited Aug. 15, 2024).

(additional citations omitted); Doc. 6-1, at 4 (citations omitted); Doc. 18, at 11 (citations omitted).) But this factor alone is not dispositive. See Williams v. Wright, 927 F.2d 1540, 1544 (11th Cir. 1991) ("[T]he payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage" (citation omitted)). And, for the reasons set forth above, all other factors weigh in favor of finding the Agreement is an ERISA plan because a reasonable person can ascertain (1) the intended benefits, (2) the class of intended beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits. See Donovan, 688 F.2d at 1373. Thus, Plaintiffs' arguments are unpersuasive, and the Court finds the Agreement is a "plan, fund, or program." See id. at 1371 (citation omitted).

The evidence also shows the Agreement was "established or maintained" by an employer. See id. (citation omitted). "A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1214 (11th Cir. 1999) (citations omitted). Moreover, a plan is "maintained" when the payment of benefits or the administrative functions associated with the plan are continued. Anderson v. UNUM Provident Corp., 369 F.3d 1257, 1265 (11th Cir. 2004). While Plaintiffs now dispute whether Defendants are providing the *type* of Medicare

supplement policy they initially agreed to provide, Plaintiffs do not dispute that Defendants generally are providing Medicare supplement policies to at least some Qualifying Individuals. (See Doc. 1-1, at 8; Doc. 1-2, at 71, 73, 75.) The evidence also demonstrates Defendants continue to offer the Medicare supplement policies for at least some Qualifying Individuals. (Doc. 1-1, at 24 ("Piedmont continues to offer these health benefits and no changes are planned at this time.").) And Plaintiffs do not dispute that Defendants — initially UHS, but now Piedmont — are the employers allegedly responsible for providing the Medicare supplement policies for Qualifying Individuals. (Id. at 6.) Therefore, the Court finds the Agreement was not only established but also maintained by Plaintiffs' employers, UHS and Piedmont. See Donovan, 688 F.2d at 1371 (citation omitted).

The Court also finds the Agreement was created for the purpose of providing benefits to eligible participants or their beneficiaries. See id. (citation omitted). As discussed above, the benefits provided under the Agreement are medical benefits in the form of Medicare supplement policies. (Doc. 1-1, at 6, 11-19.) These benefits were available for Qualifying Individuals. (Id. at 6-7.) As each of the Donovan elements has been satisfied, the Court finds the Agreement is an "employee welfare benefit plan" and, therefore, falls within ERISA's scope. See 688 F.2d at 1371 (citation omitted); Anthem Health Plans, 591 F.3d at 1350

21

(citations omitted).  The Court now turns to whether an exemption applies.

*ii.* Whether an Exemption Applies

In Plaintiffs' view, even if the Agreement would otherwise be an "employee welfare benefit plan," it is exempt from ERISA as: (1) a "payroll practice"; (2) an "excess benefit plan"; or (3) a "governmental plan."  (Doc. 6, ¶¶ 3-5, 13-17; Doc. 6-1, at 3-5; Doc. 18, at 5-12; Doc. 25, at 7-10.)  The Court addresses each argument in turn.

**I. "Payroll Practice" Exemption**

Plaintiffs first argue the Agreement is exempt from ERISA because, rather than providing medical benefits, it provides a form of deferred wages.  (Doc. 6, ¶ 13; Doc. 6-1, at 3; Doc. 18, at 5-11; Doc. 25, at 1, 4, 7-9.)  Plaintiffs contend their right to the Alleged Benefit vested if they met the Eligibility Criteria. (Doc. 25, at 1.)  However, "[t]he 'hidden paycheck' was not due to be paid until a Plaintiff reached the age of 65 years.  At that time, the wage was payable by furnishing to that Plaintiff a free life-time Medicare supplement policy for traditional Medicare coverage . . . ."  (Id. at 1-2.)  According to Plaintiffs, this constitutes an ERISA-exempt "payroll practice" under 29 C.F.R. § 2510.3-1(b).  (Id. at 1-2, 7-9.)  Defendants disagree, arguing the "payroll practice" exemption does not apply because (1) the Alleged Benefit is not "wages"; and (2) the plain language of 29

22

C.F.R. § 2510.3-1(b) demonstrates it is inapplicable.  (Doc. 13, at 14-20; Doc. 21, at 8-11, 12-14; Doc. 28, at 2-3.)

The Court finds the "payroll practice" exemption inapplicable here.  First, the Alleged Benefit is not "wages."[6]  Plaintiffs cite to Georgia law and the 1957 version of Black's Law Dictionary in support of their argument that the Alleged Benefit is deferred wages.  (Doc. 18, at 5-6; Doc. 25, at 3-4.)  But Plaintiffs cite no authority indicating state law is applicable.  (See Docs. 18, 25.)  Defendants urge the Court to consider the provisions of the Internal Revenue Code ("IRC").  (Doc. 13, at 14-15.)

As the Eleventh Circuit has recognized, "[m]any ERISA sections have parallel provisions in the [IRC]."  Lyons v. Ga.-Pac. Corp. Salaried Emps. Ret. Plan, 221 F.3d 1235, 1243 (11th Cir. 2000).  Furthermore, the Internal Revenue Service ("IRS"), the federal agency responsible for enforcing the IRC, is also one of the agencies responsible for enforcing ERISA.  La Mura v. United States, 765 F.2d 974, 979 n.6 (11th Cir. 1985) (citing 26 U.S.C. § 7801(a); Donaldson v. United States, 400 U.S. 517, 534 (1971)); Lyons, 221 F.3d at 1245 (citation omitted).  For these reasons, the Court finds the IRC's provisions and the IRS's regulations more persuasive in this context.

---

[6] To the extent Plaintiffs intended to assert a standalone argument that the Alleged Benefit is not an "employee welfare benefit plan" because they are wages, that argument fails for the same reasons discussed herein.

The IRC defines "gross income" as "all income from whatever source derived, including . . . [c]ompensation for services." 26 U.S.C. § 61(a)(1). The IRS provides wages are included in "gross income" "unless excluded by law." 26 C.F.R. § 1.61-2(a)(1). The Agreement provides Qualifying Individuals with medical benefits in the form of a Medicare supplemental insurance policy. (Doc. 1-1, at 6-7.) However, as Defendants point out, such benefits are excluded from "gross income" under 26 U.S.C. § 105(b). (Doc. 13, at 14-15 (citation omitted).) Because "wages" are included in "gross income" while medical benefits like those provided in the Agreement are not, the Court finds the Alleged Benefit is not "wages."

Plaintiffs insist the Alleged Benefit is similar to the lump-sum payment at issue in Fort Halifax Packers Co. v. Coyne, 482 U.S. 1 (1987). (Doc. 6-1, at 3.) But Coyne is distinguishable. There, the Supreme Court addressed "whether a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing" was preempted by ERISA. Coyne, 482 U.S. at 3-4 (citations omitted). The Supreme Court held the Maine statute was not preempted by ERISA because it "neither establishe[d], nor require[d] an employer to maintain, an employee benefit *plan*." Id. at 12 (emphasis in original). The Supreme Court reasoned "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative

scheme whatsoever to meet the employer's obligation." Id.  Coyne is therefore distinguishable from the present case because if a Qualifying Individual is eligible for the Alleged Benefit, Defendants will pay the Qualifying Individual's premiums every year for the rest of the Qualifying Individual's life.  (Doc. 1-1, at 6-7.)  The Court finds an ongoing administrative scheme,[7] which was not present in Coyne.  As a result, the present matter is not controlled by Coyne.

Second, the "payroll practice" exemption, by its terms, does not apply here.  The "payroll practice" exemption comes from a Secretary of Labor regulation "that excludes certain 'payroll practices' from the application of ERISA."  Stern v. Int'l Bus. Machs. Corp., 326 F.3d 1367, 1370 (11th Cir. 2003).  The regulation provides "employee welfare benefit plan" does not include:

> (1) Payment by an employer of compensation on account of work performed by an employee, including compensation at a rate in excess of the normal rate of compensation on account of performance of duties under other than ordinary circumstances, such as —
> (i) Overtime pay,
> (ii) Shift premiums,
> (iii) Holiday premiums,
> (iv) Weekend premiums;
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment); and

---

[7] Plaintiffs seem to argue an administrative scheme is not "ongoing" if it does not require day-to-day administration.  (Doc. 6, ¶¶ 5, 14.)  But Plaintiffs cite no authority for this proposition, and the Court is not aware of any.

> (3) Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) performs no duties . . . .

29 C.F.R. § 2510.3-1(b)(1)-(3).

Plaintiffs do not specify which of the "payroll practice" exemptions applies, but the regulation's plain text indicates none of them do. First, each provision targets payment of "compensation." Id. However, as explained above, the Alleged Benefit does not constitute "wages," and Plaintiffs do not argue the Alleged Benefit constitutes another form of "compensation." (See Docs. 6, 6-1, 18, 25.) As mentioned previously, Plaintiffs take issue with Defendants paying the Alleged Benefit out of their general assets. (Doc. 6, ¶ 4; Doc. 6-1, at 4; Doc. 18, at 10-11.) Subsections (b)(2) and (3) specifically mention payment of compensation out of an employer's general assets. 29 C.F.R. §§ 2510.3-1(b)(2)-(3). Yet, Plaintiffs do not allege they were not performing their duties for any reason. (See Doc. 1-1, at 5-9); 29 C.F.R. § 2510.3-1(b)(2)-(3). Thus, for this additional reason, none of the provisions of the "payroll practice" exemption apply.

## II. "Excess Benefit Plan" Exemption

Next, Plaintiffs argue the Agreement is exempt from ERISA as an "excess benefit plan." (Doc. 6, ¶ 17.) Defendants contend this exemption does not apply because it only applies to retirement

plans, and the Agreement is not such a plan.  (Doc. 13, at 25–26.)
The Court agrees.  An "excess benefit plan" is "a plan maintained
by an employer solely for the purpose of providing benefits for
certain employees in excess of the limitations on contributions
and benefits imposed by [26 U.S.C. § 415]."  29 U.S.C. § 1002(36).
Plaintiffs do not allege the Agreement exists "solely for the
purpose of" providing benefits in excess of the limitations imposed
by 26 U.S.C. § 415.  (See Doc. 1-1, at 5–9.)  In fact, Plaintiffs
never suggest the Agreement is related to or implicates 26 U.S.C.
§ 415 at all.  (See id.; see also Docs. 6, 6-1, 18, 25.)  As a
result, the "excess benefit plan" exemption does not apply here.

### III.  "Governmental Plan" Exemption

Lastly, Plaintiffs argue the Agreement is exempt from ERISA
as a "governmental plan."  (Doc. 6, ¶¶ 15–16; Doc. 6-1, at 5; Doc.
18, at 11–12; Doc. 25, at 9–10.)  "[G]overnmental plan[s]" are
specifically exempted from ERISA's requirements.  29 U.S.C.
§ 1003(b)(1).  A "governmental plan" is "a plan established or
maintained for its employees by the Government of the United
States, by the government of any State or political subdivision
thereof, or by any agency or instrumentality of any of the
foregoing."  29 U.S.C. § 1002(32).  Plaintiffs argue Defendants
are "instrumentalities" of the State of Georgia for two reasons.
(Doc. 6-1, at 5; Doc. 18, at 11–12; Doc. 25, at 9–10.)  First,
because "UHS is owned by the Richmond County Hospital Authority"

("RCHA").   (Doc. 6-1, at 5 (citing <u>Williams-Mason v. Reliance Standard Life Ins. Co.</u>, No. CV 206-124; 2006 WL 1687760 (S.D. Ga. June 16, 2006)).)   Second, Plaintiffs argue Defendants are instrumentalities of government because, pursuant to a 1984 lease agreement between UHS and the RCHA (the "Lease Agreement"), the RCHA controls UHS.   (Doc. 6, ¶¶ 15-16; Doc. 18, at 11-12; Doc. 25, at 9-10.)   Neither argument is persuasive.

Plaintiffs' first argument is not supported by the record. (Doc. 6-1, at 5.)   Indeed, the only evidence in the record goes against finding RCHA owns UHS.   Defendants provided the affidavit of David Belkoski in response to Plaintiffs' motion to remand. (Doc. 14.)   Mr. Belkoski provides he is Defendants' Chief Financial Officer, and the statements in his affidavit are based on his personal knowledge and review of the business records attached to his affidavit.   (<u>Id.</u> ¶¶ 1-2.)   Mr. Belkoski avers the RCHA does not have, and never has had, any ownership interest in UHS, and, as of March 1, 2022, Piedmont is UHS's sole member.   (<u>Id.</u> ¶ 9.) Thus, the record does not support, and in fact contradicts, Plaintiffs' argument that UHS is owned by the RCHA.

Plaintiffs' second argument is also unavailing.   (Doc. 6, ¶¶ 15-16; Doc. 18, at 11-12; Doc. 25, at 9-10.)   Defendants contend UHS and the RCHA are two legally distinct entities who merely have a contractual relationship governed by the Lease Agreement.   (Doc. 13, at 23.)   The Court agrees.   Rather than indicate the RCHA

controls UHS, the Lease Agreement provides UHS is responsible for the day-to-day operations of the hospital.  (Doc. 14-1, at 8-9.) Moreover, the Lease Agreement authorizes UHS to decide whether to augment services and gives UHS "complete discretion in deciding whether or not to repair or replace" assets.  (Id. at 6, 13.)  Most notably, under the Lease Agreement, all RCHA employees became UHS employees, and UHS became "solely responsible for the payment of all salaries and employee benefits" and was given "discretion to hire, terminate, promote or assign employees."  (Id. at 14.)  The Court finds the terms of the Lease Agreement do not demonstrate the RCHA controls UHS such that, by entering the Lease Agreement, UHS lost its status as a private corporation and became an "instrumentality" of the government.  See Darden v. Dekalb Med. Ctr., Inc., No. 1:07-cv-2652, 2008 WL 11319981, at *2 (N.D. Ga. Jan. 7, 2008) (concluding a hospital was not an instrumentality of the government, although it was created by a hospital authority, because "[a]lthough the hospital lease[d] property from the hospital authority, the hospital authority d[id] not manage the hospital's day-to-day business affairs, nor did it establish the employee benefit plan at issue" there).

Despite this, Plaintiffs argue UHS is an "instrumentality" of government because the lease was amended to provide that UHS was subject to Georgia's Open Records Act and Open Meetings Act.  (Doc. 18, at 11-12; Doc. 25, at 9-10.)  Plaintiffs principally rely on

two cases: (1) the Georgia Supreme Court's decision in <u>Richmond County Hospital Authority v. Richmond County</u>, 336 S.E.2d 562 (Ga. 1985); and (2) this Court's decision in <u>Williams-Mason</u>, 2006 WL 1687760. (Doc. 6, ¶ 15; Doc. 6-1, at 5; Doc. 18, at 11–12; Doc. 25, at 9.) However, as Defendants point out, neither case applies. (Doc. 13, at 22.)

In <u>Richmond County</u>, the Georgia Supreme Court recognized the Lease Agreement was amended to include "a requirement to comply with both Georgia's open-records and open-meetings laws." 336 S.E.2d at 569 (citing O.C.G.A. §§ 50-18-70, 50-14-1). However, that case did not involve claims under ERISA and does not hold that a private entity becomes an instrumentality of government by agreeing to comply with state open records and open meetings laws. <u>See</u> <u>id.</u> In <u>Williams-Mason</u>, this Court held the long-term disability program the plaintiff's former employer established and maintained was exempt from ERISA because the employer, "a hospital authority established pursuant to the Georgia Hospital Authorities Act," was an instrumentality of the state. 2006 WL 1687760, at *1, 4 (citation omitted). <u>Williams-Mason</u> is equally inapplicable here because neither Defendant is a hospital authority and, as explained above, neither Defendant is controlled by one. Thus, Defendants are not government "instrumentalities", and the "governmental plan" exemption does not apply.

30

In sum, the Court finds the Agreement is an "employee welfare benefit plan" that is not otherwise exempt from ERISA. As a result, Plaintiffs' claim falls within ERISA's scope. See Anthem Health Plans, 591 F.3d at 1345 (citing Davila, 542 U.S. at 210).

      b. *Whether Plaintiffs Have Standing to Sue Under ERISA*

The Court now turns to whether Plaintiffs have standing to bring their claim under ERISA. See id. at 1350 (citations omitted). Employees that are potentially eligible to receive benefits under an employee welfare benefit plan have standing to assert a claim under ERISA. Dye v. Hartford Life & Accident Co., No. 5:13-CV-428, 2014 WL 1379246, at *4 (M.D. Ga. Apr. 8, 2014) (citing Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1351 (11th Cir. 1998)); see also 29 U.S.C. § 1002(7) (defining "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer"). Under the Agreement, a Qualifying Individual becomes eligible to receive the Alleged Benefit upon reaching age sixty-five if the Qualifying Individual meets the Eligibility Criteria. (Doc. 1-1, at 6-7.) Plaintiffs allege they are eligible to receive the Alleged Benefit. (Id. at 5.) Because Plaintiffs are potentially eligible to receive the Alleged Benefit, they have standing to sue under ERISA. See Dye, 2014 WL 1379246, at *4 (citation omitted); see also 29 U.S.C. § 1002(7). As Plaintiffs'

claim falls under ERISA and they have standing to sue under that statute, the Court finds Plaintiffs could have brought their claim under ERISA. See Anthem Health Plans, 591 F.3d at 1350 (citations omitted).

2. Whether an Independent Legal Duty Supports Plaintiffs' Claim

The Court next considers the second prong of the Davila test: whether an independent legal duty supports Plaintiffs' claim. Id. at 1345 (citing Davila, 542 U.S. at 210). This prong is satisfied if Plaintiffs' claim "arise[s] solely under ERISA or an ERISA plan." Garcon v. United Mut. Of Omaha Ins. Co., 779 F. App'x 595, 598 (11th Cir. 2019) (citing Anthem Health Plans, 591 F.3d at 1353). Defendants argue Plaintiffs' claim does not implicate a legal duty independent of ERISA because Plaintiffs rely solely on Defendants' breach of the Agreement to support their claim, and that contract is an "employee welfare benefit plan" under ERISA. (Doc. 13, at 25.) Plaintiffs contend their claim is supported by an independent legal duty, namely state breach of contract law. (Doc. 18, at 13 ("This case is not about ERISA benefits but contractual benefits involving [s]tate law . . . .").)

The Eleventh Circuit and courts within this Circuit have held that claims based on benefits allegedly owed under the terms of an ERISA plan are "not 'predicated on a legal duty that is independent of ERISA.'" Garcon, 779 F. App'x at 598 (quoting Anthem Health

32

Plans, 591 F.3d at 1353; citing Davila, 542 U.S. at 214).
Plaintiffs seek just that: they ask the Court for a declaratory
judgment requiring "Defendants . . . to honor the terms and
provisions of" the Agreement.   (Doc. 1-1, at 9.) Therefore, the
Court finds Plaintiffs' claim is not supported by a legal duty
independent of ERISA.   Anthem Health Plans, 591 F.3d at 1345
(citing Davila, 542 U.S. at 210).

   3. Plaintiffs' Claim is Completely Preempted

   For the reasons discussed herein, the Court finds Plaintiffs
could have brought their claim under ERISA and no other independent
legal duty supports it.   Id. (citing Davila, 542 U.S. at 210).
Plaintiffs' claim is thus completely preempted by ERISA, providing
the Court subject-matter jurisdiction under 28 U.S.C. § 1331.   See
id. at 1343, 1345.  As a result, Plaintiffs' motion to remand (Doc.
6) is **DENIED.** Because Plaintiffs' amended complaint is based on
inapplicable state law, to the extent Plaintiffs wish to continue
this lawsuit, they shall have thirty days from the date of this
Order to file a second amended complaint alleging claims under
ERISA.   See Butero, 174 F.3d at 1215 (holding the district court
properly dismissed claims completely preempted by ERISA with leave
to refile).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion to remand (Doc. 6) is **DENIED** and motion to amend (Doc. 31) is **DENIED AS MOOT**.  If Plaintiffs wish to continue this lawsuit, they **SHALL FILE** a second amended complaint alleging claims under ERISA within **THIRTY (30) DAYS** of the date of this Order. Once Plaintiffs file their second amended complaint, Defendants will have **THIRTY (30) DAYS** to answer or otherwise respond.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of August, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA