IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ROBERT M. TAYLOR, III, DEBORAH R. MANGUM, ) <br> LEONARD K. SWEATMAN, SARAH W. ALEEM, ) <br> HASSIE ALEXANDER, MARILYN BOWCUTT, ) <br> CARRIE L. ANDERSON, SHEILA S. ASH, TESSIE B. ) <br> ATKINS, VERNIE L. ATKINS, MARY H. BARNETT, ) <br> DEBRA SHIREY BAXTER, BEA BELL-THOMPSON, ) <br> BOBBIE BENNEFIELD, GLORIA L. BERRY, VERA H. ) <br> BEY, JOYCE BISHOP, DARLENE F. BOYD, MARILYN ) <br> BRADDY, ANGELA D. BROWN, COLLEEN D. ) <br> BROWN, DEBORAH S. BROSKE, TERESA ) <br> BUSCHBAHER, CYNTHIA E. BYRNES, MARJORIE J. ) <br> CAIN, PAMELA JONES CANNON, MARY E. CARTER, ) <br> ROSEMARY A. CARTER, SHARON N. CHAMINEAK, ) <br> MARY L. CHEEK, CLARA LOU CLARK, JESSIE ) <br> LAMAR CLEMENTS, JURICE COFER, AVA DENISE ) <br> CONGER, THEODORE CONNER, DIANA CORDY, ) <br> JOSIE CRAWFORD, MARYNELL CRAWFORD, ) <br> CHERYL E. CRISLIP, ROSIE CRYER, VIVIAN DACUS,) <br> MARION T. DANIEL, CHERYL B. DAVENPORT, ) <br> EDMOND DEKETELEARE, DEBORAH M. DAVIS, ) <br> MARY HURST DeLONG, PEGGY B. DICKS, ) <br> MARIANN S. DOLEZAL, GEORGE DAVID DOWD, ) <br> JERI BETH DUNBAR, DIANE EDENFIELD, ANN B. ) <br> EDWARDS, CARMEN J. ESCARTIN, SUE SAIN ) <br> ESTES, ARTHUR EVANS, JR., PEGGY LYNN EVANS, ) <br> WANDA EVANS, CONNIE FAIRCLOTH, ELIZABETH ) <br> FAISON, KAREN J. FAVORS, DOROTHY FERGUSON,) <br> FE FERNANDEZ-GARCIA, HENRY J. FLOWERS, ) <br> DONNA FORD, DORIS FOREMAN, KAREN FOWLER, ) <br> BENITA FREY, LULA FAYE FROELICH, EMILY ) <br> WYNONA BURCH FULLER, JOYCE F. FULLER, ) <br> EVELYN GAGNON, ALICE GERMANY, ROBBI M. ) <br> GILMORE, DANNY G. GLOVER, HAZEL GOLPHIN, ) <br> REANN GRANTUM, MINNIE GRISSETT-CUMMINGS,) <br> HARRIET GULLEDGE, SHARON DIANE GREENE, ) <br> BOBBIE JEAN HARRIS, IRIS E. HARRIS, PAMELA W. ) <br> HARRISON, DEBRA J. HAWKES, LINDA HERRON, ) <br> CAROL HIERS, SAYONA FOX HILL, LOIS V. HIXON, ) <br> SUSAN G. HOUSE, KYLE E. HOWELL, JULIE ) <br> HUGHES, NANCY P. INGLETT, DONNA MARIE ) <br> INGHAM, LORETTA IRBY, DWALA JACKSON, ) <br> EUNICE W. JOHNSON, HARRIETT T. JOHNSON, ) <br> JERRY J. JOHNSON, LINDA B. JOHNSON, ) <br> MARTHA F. JOHNSON, VIRGINIA F. JOHNSON, ) | CIVIL ACTION FILE <br><br> FILE NO. CV124-019 |

ELJENETTE JONES, NAOMI JONES, PATRICIA H.     )
JONES, SUSIE JONES, FLORILEE JOWERS, TERRI    )
KEENER, LILLIE CATHERINE LAMAR, ELIZABETH  )
ANN LAMB, LAURIE LANGNER, ALLEN E.            )
LEDBETTER, SANDRA L. LEDBETTER, DORIS A.      )
LEE, DORIS LEWIS, KEN LITKE, PAMELA HENSLEY)
LONG, S. T. LOWE, JR., BARBARA K. LUTHER,     )
ERNESTINE MACKEY, AMELIA FAYE MADDOX,     )
GWENDOLYN E. MANN, MAMIE McBRIDE,             )
PAM McCASLIN, MARILYN H. McDAVID, CHERYL  )
C. McDOWELL, VONCILLE PIERCE MCKIE,           )
GEORGE J. MELLES, SHARON B. MERRITT, JOHN H. )
MESSICK, JR., KAREN MILLER, CAROLYN D. MILLS,)
BESSIE MIMS, LEOLA MIMS, CAROLINE MARIE      )
MITCHELL, BARBARA KATHLEEN MOLINI,            )
GLORIA W. MONROE, JUDY SUMMER MORRIS,       )
PATRICIA A. MOSLEY, LAURA H. MOTES,           )
ROSEMARY MOTSINGER,  ANNIE N. MURRAY,        )
GEORGEANN NELSEN, DORIS I. NELSON,            )
YVONNE NELSON, MARK STEPHEN NEWMAN,        )
THELMA OVERSTREET, MARY JUNE OWENS,         )
JOHN R. PEARSON, ROBIN C. PETRY, ROSAMMA    )
PHILIP, JANET N. PIERCE, KATIE POPPELL,        )
ALVERTA KAY POSS, NANCY G. POWELL, DONALD)
G. PRELESNIK, GENEVA J. PRINCE, DIANA S.       )
REES, KAREN LYNN REECE, TONI WARR REESE,     )
MICHAL ANN RHODES, GRACE P. RILEY,            )
MARZELLE WOOD RUCZKO, GLORIA SANDERS,      )
DEEDEE SEALS, SHIRLEY SELF, BARBARA A.        )
SIKES, WILLIE PATRICIA SIKES, DENISE GREEN    )
SIMON, CYNTHIA DIANE SIMS, BETTY SMITH,       )
MARTHA G. SMITH, ROBBIN SHARON SMITH,        )
VICKI SMITH-KOHLER,  REBECCA SNELLING,        )
ARVID SODERBERG, DONNA B. SPIRES, ROBERT E. )
STANFORD, BERTHA STEVENS- DRAIDFORT,         )
HAROLD W. STEWART, JR., FRANCES STOKES,      )
PATRICIA ABNEY STOKES, EULA O. STONE,         )
SYBIL SURRETT, CARMEN LUCIA TAKACS,           )
CLARISE TARVER, HENRIEE DANNETTE THOMAS  )
JEANETTE THOMAS, TOM THOMAS,                  )
JACQUELYN C. TYLER, RITA BROOKS VAUGHN,     )
MARY WADE, DONNA W. WALKER, BARBARA        )
WALTON, CAROLYN WASHINGTON, GeJUAN C.      )
WATERS, DAVID L. WHEELER, JULIA T. WHEELER, )
CHARLES H. WHITE, DIANE J. WHITE, SHARON G.  )
WHITE, DEBORAH WHITFIELD, DELORES             )
WHITFIELD,  CAROLYN WILLIAMS, FRANCES        )

2

| | |
|---|---|
| MURRAY WILLIAMS, MARGARET E. WILLIAMS, MAXENE E. WILLIAMS, MARY WILSON, DEBRA WISE, JAMES WONG, JOY WORKMAN, VICKIE WOJTASZEK, PHYLLIS WRIGHT, GEORGE YODER, CHERRY YOUNG, DONNA BLACK BATES, STEPHEN WATSON FOGLER; SUSAN GILLESPIE, MYLENE SHAW GRIFFIN; ELIZABETH FAYE HUBBARD, LISA NOVOTNY JACKSON, LISA JOHNSON, DEBRA NEWTON KENNEDY, DOROTHY HULL KIMBROUGH, RICHARD MAKERSON, DEBORAH CRANE PRYOR, REBECCA ROBERTS SHERMAN, HEBE S. WREN, JANIE ELEANOR BRYANT and WARREN C. WEATHERFORD, <br><br>                       PLAINTIFFS, <br><br> VS. <br><br> UNIVERSITY HEALTH SERVICES, INC. and PIEDMONT HEALTHCARE, INC., <br><br>                       DEFENDANTS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## **BRIEF IN OPPOSITION TO MOTION TO DISMISS**

### **Preliminary Statement**

Plaintiffs are 215 former employees of University Hospital who worked in various capacities in executive positions, professional positions or in housekeeping or foodservices and were told as part of an employee retention policy that if they were employed prior to January 1, 2005 and had 30 or more years of continuous employment that they would receive a free Medigap policy for life. Attached as Exhibit "A" to Plaintiff's Complaint are some of the documents distributed to these retirees. At this stage of the proceeding, Plaintiffs do not have all of the relevant documents that are part of this plan. The documents have been requested, but have

3

not been produced by University Hospital or Piedmont. *See*, letter requesting the documents and the response by University Hospital and Piedmont's lawyer attached hereto collectively as Exhibit A. From the verified Complaint, each Plaintiff has verified that management of University Hospital told them that this was a lifetime benefit. (*See*, Doc. 37, Complaint, ¶¶9, 11, 12, 13).

At the time this benefit was given, each of the Plaintiffs received a Medigap supplemental policy for traditional Medicare. Thereafter in 2021, University told these retirees that in order to continue to receive this benefit, they had to enroll in a Medicare Advantage Plan, Part C. (Doc. 37-4, pp.1-7; Doc. 37-5, pp.1-11; Complaint, Exs. D & E). When this document was received, Ms. Marilyn Bowcutt and a number of other employees meet with the then-Hospital Administrator, Mr. Jim Davis, who agreed that University Hospital would continue to allow retirees to have their paid up traditional Medicare supplement policies free of charge. (Doc. 37-11, pp. 1-22). Despite that assurance, the statement that if they did not convert to a Medicare Advantage Plan was not corrected. As a result, only 20 of the original Plaintiffs were allowed to keep their original Medigap policies. (Doc. 37-7, p.1, Ex. F).

At the time Piedmont took over University Hospital, actuarial studies were conducted. (Doc. 37-9, pp.1-19; Doc. 37-10, pp.1-24; Complaint Exs. H & I). These documents show that as of December 31, 2021, University and Piedmont

knew that there was an unfunded liability to the retirees of $37,980,019 for this free for life Medigap insurance. (Doc. 37-9, p.4). After converting most of the retirees to a Medicare Advantage Plan, this liability was reduced to $22,589,473. (Doc. 37-9, p.4).

When retirees were told that in order to retain this benefit in 2021, they were not given any option to keep their Medigap policies, even though Mrs. Bowcutt, Mr. Taylor, Mr. Sweatman and a few others were allowed to do so. (Doc.37-7, p.1; Complaint, Ex. I).

Under COBRA, 29 U.S.C. §1162(1), the coverage for the replacement plan must be "identical to the coverage provided under the plan to similarly situated beneficiaries to when a qualifying event has not occurred. Twenty of these retirees did not have their benefits modified and were able to keep their Medigap policies, even though the remainder of the retirees did not have that option nor were they given any COBRA notice that they could do so.

For Defendants to state that there was no qualifying event under 29 U.S.C. §1163 is to ignore the language used in 29 U.S.C. § 1163(4) and to ignore the Social Security Act. Each retiree who is person entitled to Medicare is given the right to change his benefits each year during open enrollment. Each year there is a qualifying event for each retiree. Converting individuals to a Medicare Advantage Plan results in the loss of coverage, that is, being restricted to a network

5

of providers under Part C. Each of these retirees should have received a notice under 29 U.S.C. § 1166.

## Facts

At this stage of the proceedings, all of the facts are not before this Court, even though Plaintiffs have requested all of the documents relating to this plan as it relates to each of these Plaintiff. The defendants have taken the position that they are only required to furnish a copy of the "latest update summary under 29 U.S.C. §1024(B)(4). *See,* Plaintiffs' request dated September 23, 2024 and Defendant's response dated October 24, 2024 attached hereto collectively as Exhibit A. The Defendants wants to argue at this stage that if the Plaintiffs don't have all of the documents to show that there was a promise in writing to furnish this benefit "for life" that was part of this welfare plan, then this Court should dismiss this action under 29 U.S.C. §1132(a)(1) and 29 U.S.C. §1132(a)(2).

Plaintiffs have included in their Complaint not only the documents filed as Exhibit "A" (Doc. 32-1, pp.11-13), but have also filed the Actuarial Studies performed by Mercer which studies used documents that Defendants have not yet produced. ( Doc. 32-10, pp.3-4, Ex. I). These Mercer reports show that the calculations from the plan documents show that the obligation to these retirees at that time was $37,980,019 if the Medigap policies were provided and if a different type of insurance was provided and individuals converted to a Medicare Advantage

6

Plan, Part C, then the obligation could be reduced to $22,589,473. (Doc. 32-9, p.4, Ex. H).

When the Defendants proposed requiring employees to switch to a Medicare Advantage Plan, one of the individuals who held an executive leadership position at University Hospital as Chief Nursing Officer was Mrs. Marilyn Bowcutt. Mrs. Bowcutt met with the then-Chief Executive and Hospital Administrator, Jim Davis, who informed her and a few others that University would continue to provide the Medigap policies. (Doc. 37-11, pp.1-22, Ex. J). In addition to Mr. Davis telling Mrs. Bowcutt that this was a lifetime benefit, other former employees who held management positions have stated that this was a "lifetime" benefit that was promised to them. *See*, Affidavit of retired Hospital Administrator Edward Gillespie, Affidavit of Robert Taylor, III, and Affidavit of Deborah Mangum which are being filed to further support these facts. (Doc. 40).

The facts in this case when all the documents are produced will show either written terms of the plan that stated that this was a lifetime benefit as set forth in Count I or there will be additional statements like that received from Mr. Gillespie that each of these employees were promised this benefit as set forth in Count II and that University is estopped from claiming otherwise.

As to Count III involving COBRA, the allegations and the documentation attached to Plaintiffs' Complaint show that what these Plaintiffs were promised was

7

a Medigap policy under 42 CFR §403.205(a) and that when Exhibits C and D were sent, these individuals were not told that they could keep their Medigap policy. (Ex. C, Doc. 37-4, pp.1-7; Ex. D, Doc. 37-5, pp.1-11). These Plaintiffs were told in Exhibit D: "Just remember that if you opt out of the new plan for 2021, you will lose all coverage through UH!" (Doc. 27-5, p.1). The then-Chief Executive and Fiduciary, Mr. Davis, told Mrs. Bowcutt just the opposite. (Ex. J, Doc. 37-11, p.1). Most of the other Plaintiffs now recognize that being in a Medicare Advantage Plan is not in their best interests. *See*, Ex. E, Doc. 37-6, pp.1-3.

The Defendants have argued that COBRA as alleged in Count III does not apply because there was not a qualifying event. However, each retiree each year under the Social Security Act is entitled to change his/her benefits from a Medigap Policy of a different type or to go to a Medicare Advantage Plan, Part C. Nothing in 29 U.S.C. § 1163(4) uses the phrase "<u>first</u> becoming entitled to benefits". Under COBRA, 29 U.S.C. §1162(1), each of these Plaintiffs should have been able to elect coverage "similar" to what they had.

## Standard of Review

A complaint should be dismissed only when it appears that the facts alleged fail to state a "plausible claim for relief". <u>Ashcroft v. Igbal</u>, 129 S.Ct. 1937, 1949 (2009). If the claim is plausible on its face, such as the one here, a motion to dismiss should be denied. <u>Hans-Atchison v. Aetna Life Ins. Co.</u>, 2023 WL 4931072 (M.D.

Fla. 2023); Foughty v. Cleaver-Brooks, Inc., 2023 WL 7287220 (N.D. Ga. 2023). In the case at hand, the Defendants who have all the plan documents have raised factual issues about the contents of the documents and a motion to dismiss on these types of arguments should be denied at this stage. Huang v. Trinot HRIII, Inc., 2022 WL 93571 (M.D. Fla. 2022).

## Argument and Citation of Authorities

I. <u>Plaintiffs sufficiently allege a claim under Count I.   29 U.S.C. §1132(a)(1).</u>

Contrary to the arguments made on pages 7 through 10 of Defendants' brief (Doc. 38, pp.7-10), Plaintiffs do not rely only on Exhibit A to Plaintiff's Complaint. (Doc. 37-2, pp.1-13). Just because those limited documents do not include "for life" does not end the inquiry because this is not the complete plan. The Defendants have all of the plan documents and without those being produced, this Court should not dismiss this claim.

The first case cited to support their argument is Klaas v. Allstate Ins. Co., 21 F.4th 759, 766 (11th Cir. 2021). That case was decided after discovery on a motion for summary judgment. It is not apparent from the "face of the documents that are before this Court" at this time that this was not a lifetime benefit, since all of the documents available at the time of the Mercer study have not been produced and it is not logical that the actuarial valuation report would have set forth as $37,980,019

unfunded liability if Mercer was told that University Hospital could terminate this coverage at any time. Mercer must have been furnished documents which show that this was an obligation to provide this insurance for life to retirees. (*See,* Doc. 37-9).

On page 8, note 1, of their brief, Defendants try to state that the earlier Medigap coverage was offered by Aetna in 2010 (Doc. 37-2, p.7) and that this coverage is the same as the Aetna Medicare Advantage Plan that University Hospital converted a number of retirees to in 2021 and 2022. (Exs. C and D, Doc. 37-4, pp.1-7; Doc. 37-5, pp.1-11). Defendants know that this is not factual and to try to confuse this issue is disingenuous. University Hospital's argument that a Medigap policy is the same as a Medicare Advantage Plan is not factually correct. What is known is that this switching individuals to a Medicare Advantage Plan was done to reduce University Hospital's costs from $37,980,019 to $22,589,473. (Doc. 37-9, p.4). Mrs. Bowcutt and a few others realized this and approached the then-Administrator, Mr. Davis, who kept the Medigap coverage for Mrs. Bowcutt and a handful of others, but then switched others to a Part C Medicare Advantage Plan. (Doc. 37-11, pp.1-22).

University argues on page 9 of its brief that it reserved the right to terminate or change this benefit at any time. However, University has not produced any document that says that after the benefit is vested, that is, the employee

continued for 30 or more years of continuous service that the plan allowed this benefit to be revoked.

On page 10, the Defendants cite <u>M&G Polymers USA, LLC v. Tackett</u>, 574 U.S. 427 (2015) where the court held that for purposes of a claim under 29 U.S.C. §1132(a)(1)(B) that a commitment to vest should not be inferred lightly and it must be in the plan document. Without Defendants producing all of the plan documents, it would be improper to dismiss this claim at this stage, especially since documents furnished by it to Mercer obviously stated that this was a vested benefit or they would not have determined the liability to University Hospital as over $37,000,000.

II.  <u>Plaintiffs have breach of fiduciary claims under Count II of their Complaint.</u>

The breach of fiduciary claims asserted in this case are similar to those asserted in <u>Jones v. American General Life and Accident Inc. Co.</u>, 370 F.3d 1065 (11th Cir. 2004). In that case, claims were asserted both under 29 U.S.C. §1132(a)(1)(B) and 29 U.S.C. §1132(a)(3) after a corporate acquisition similar to what has occurred here. In that case, Mr. Jones and other life insurance salesmen were promised a free life insurance policy due to their longevity. In that case, the breach of fiduciary duty claim was based in part upon the fact that management had told these employees that this benefit could not be lost or taken away. Plaintiffs Taylor and Mangum were part of management and they have filed affidavits to that

effect. In addition, Retired Hospital Administrator Edward Gillespie has stated that employees were told that this was a lifetime benefit. The Court held that evident like that was enough to state a claim under 29 U.S.C. §1132(a)(3).

The basis of the claims under 29 U.S.C. §1132(a)(1)(B) and 29 U.S.C. §1132(a)(3) are not the same and the evidence to support differs in part even though management has stated that the employee retention plan provided lifetime benefits.

Plaintiffs acknowledge that once discovery is completed that the Plaintiffs will have to decide if they are basing their claims on 29 U.S.C. §1132(a)(1)(B) or 29 U.S.C. §1132(a)(3). Nothing prohibis the Plaintiffs from asserting alternative claims as was done in Jones, *supra*. The claims in the Amended Complaint are set forth in the same fashion as in Jones, *supra*.

Defendants argue that Plaintiffs cannot plea a claim under 29 U.S.C. §1132(a)(1)(B). That is not what Ogden v. Blue Bell Creamers, 348 F.3d 1284 (11th Cir. 2003) holds. In that case, the plaintiff lost a claim in the Alabama State Court because the plaintiff failed to serve one defendant or move for judgment. After that the plaintiff then filed another lawsuit. The Court held that the claim under 29 U.S.C. §1132(a)(1)(B) was banned by the doctrine of *res judicia*.

Defendants argue that both claims under 29 U.S.C. §1132(a)(1)(B) are based on the same conduct. That is not correct. Plaintiffs' claim to Count I relates to the terms of the plan which were known to the actuaries and which is known to

University Hospital. The claims in Count II are further supported by the fact that management told them this was a lifetime benefit. University is estopped from denying this.

In <u>Rosario v. King & Prince Seafood Corp.</u>, 2006 WL 2367130 (S.D.Ga. 2006), the Court certified a class action and correctly pointed out that in <u>Jones</u>, *supra*, the plaintiffs were permitted to set forth a claim for equitable relief or estoppel based on the fact that the allegations were based on different allegations of misconduct. That is exactly what the Plaintiffs' Complaint has done here.

III.   <u>Plaintiffs set forth a claim for violation of COBRA in Count Three.</u>

Defendants have argued that there was not a qualifying event under 29 U.S.C. §1163 and that therefore there was no requirement for a notice under COBRA or the right to continue with their Medigap coverage. Under the Social Security Act, 42 U.S.C. § 1395, *et. seq.*, retired individuals are permitted each year to change the level of their Medigap coverage or to switch to or from a Part C Medicare, that is, a Medicare Advantage Plan. 29 U.S.C. §1163(4) does not say the covered employee "first" become entitled to benefits. Therefore, a qualifying event can for a Medicare eligible person occur more than once. As to a disabled person, he could qualify then recover from the disability, etc. The purpose of COBRA is to make sure that the coverage is "identical to the coverage" provided by the plan. 29 U.S.C. §1162(1).

If coverage is modified for any group similarly situated, it should be modified for all.

In this case, some retirees were able to keep their Medigap coverage as the result of the actions of Mrs. Bowcutt and others were not. No notice was given to these individuals as required by 29 U.S.C. §1166.

## Conclusion

At this stage of this case, this motion should be dismissed; the Defendants should be required to answer; and the Court should allow discovery to proceed.

This 7th day of November, 2024.

*/s/John B. Long*
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

*/s/Thomas W. Tucker*
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs

OF COUNSEL:

TUCKER LONG, P.C.
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA  30903
(706) 722-0771
(706) 722-7028 Fax
jlong@tuckerlong.com
ttucker@tuckerlong.com