IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ROBERT M. TAYLOR, III, et al., ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | CASE NO. |
| VS. ) | 1:24cv00019-JRH-BKE |
| ) | |
| UNIVERSITY HEALTH SERVICES, INC. ) | |
| and PIEDMONT HEALTHCARE, INC., ) | |
| ) | |
| DEFENDANTS ) | |

**<u>PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF
FILED DECEMBER 18, 2024 (DOC. 47)</u>**

1.   **Plaintiffs have set forth a claim under ERISA Sec. 502(a)(1).**

On pages 6-7, Note 3, the Defendants attempt to undermine the significance of <u>Medina v. Time Ins. Co.</u>, 3 F.Supp.2d 996 (S.D. Ind. 1998) and <u>Member Services Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa</u>, 130 F.3d 950 (130 Cir. 1997).   In <u>Medina</u>, the Court pointed out that there was an effort by the administrator of the plan "to change the bet after the race is over which is not permitted under general principles of contract law".  There, the Court wrote at page 5 that:

> …courts have generally rejected attempts by welfare benefit plan sponsors or insurers to apply changes *retroactively* so as to deny benefits that had already vested.  Case law is relatively sparse, probably

because such audacious attempts to call off a bet after the race is over are rarely litigated.

In <u>Confer v. Custom Engineering Co.</u>, 952 F.2d 41 (3rd Cir. 1991), after an employee was seriously injured in a motorcycle accident, the employer attempted to amend the welfare plan to exclude such claims without success.

In the first appeal in <u>Barker v. Ceridian Corp.</u>, 122 F.3d 628 (8th Cir. 1997), the court reversed the District Court's grant of summary judgment to the employer citing <u>In re White Farm Equip. Co.</u>, 788 F.2d 1186, 1193 (6th Cir. 1986). The Court wrote at p. 633:

> "…However, the simple fact that ERISA does not require vesting of welfare benefit plans does not mean that a <u>welfare benefit plan will never vest</u>. An employer and employee may contract for post-employment welfare benefits that vest…" [Emphasis added].

In remanding the case, the Eighth Circuit instructed the District Court to consider extrinsic evidence if the intent of the language used created the ambiguity.

After remand, the District Court again found for the employer and was again reversed. <u>Barker v. Ceridian Corp.</u>, 193 F.3d 976 (8th Cir. 1999), cert denied 529 U.S. 1109 (2000). The Court of Appeals held that the plan documents of the welfare plan were not intended to affect participants who were already disabled at the time of

any plan change and in essence held that such retroactive changes in the welfare plan were not permitted.

While this Court does not have before it a copy of the welfare plan and summary plan that were used by University over the years during which it offered its employees this retention plan and benefit, even if this Court had those documents, the situation here would be no different than a welfare plan sponsor attempting to modify and eliminate a death benefit, disability benefit or obligation to pay a medical bill after the death, disability or incurrence of a medical bill. Filipowicz v. American Stores Benefit Plan Committee, 56 F.3d 807 (7th Cir. 1995); Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan, 38 F.3d 514 (10th Cir. 1994).

University and Piedmont do not want this Court to consider any extrinsic evidence as to the intent in making this promise as the Eighth Circuit considered in Barker v. Ceridian Corp., 193 F.3d 976 at 980-981 (1999).

To adopt the position currently being advanced by the Defendants requires that this Court consider these promises as illusory or nothing but an effort to cheat the Plaintiffs. Plaintiffs do not believe that the previous Hospital Board or Administrators had that intent and request that this Court require that the Defendants produce the extrinsic evidence in its possession that shows the intent of this promise to provide free Medigap policies to retirees who were employed prior to January 1,

3

2005 and have thirty (30) or more continuous years of service as employees of University Hospital.

Each of the Plaintiffs in this case was employed prior to September 1, 2005 and had thirty (30) or more continuous years of service as an employee of University. When that thirty (30) years of uninterrupted service was completed, the benefits were vested benefits, that is, each was entitled to a free-for-life Medigap insurance policy to supplement their Medicare coverage once they were of Medicare age (i.e., 65 years). For these Defendants to argue that it reserve the right to nullify that obligation would mean that the contract was nothing but an illusory promise or void contract. To adopt the construction being advocated by the Defendants and to hold that these vested benefits could be retroactively eliminated which, if adopted to disability and death benefits, would make the terms of welfare plans meaningless. ERISA's purpose was to protect employees, not as a means of cheating them.

In this case, once a Plaintiff completed 30 years of continuous uninterrupted service, this benefit was earned – just like wages would be earned when the work is performed under any employment contract. *See*, Ware County Bd. of Ed. v. Taft, 350 Ga.App. 848, 830 S.E.2d 326 (2019), a worker's compensation case where the Georgia Court of Appeals held that wages were earned when the work was done, that is, became vested when the work was done. O.C.G.A. § 34-7-1 implies that wages are payable at a stipulated time period, that is, when the work is done. In this case,

4

the right to this benefit was vested once each of the Plaintiffs met the qualification set by University. What the Defendants are asserting is that these employees can do their part in earning this benefit, which would be no benefit at all if the Defendants had the right to terminate the benefit at will after the benefit is earned.

On page 4 of their brief, Defendants cite Alday v. Container Corp. of America, 906 F.2d 660, 665 (11th Cir. 1990), a case that was decided on a motion for summary judgment, not on a motion to dismiss, and in which the Court had the plan documents before it. There, the plan reserved the right to "terminate, suspend, withdraw, amend or modify the plan in whole or in part at any time". In that case, there was no effort to retroactively terminate the payment of medical expenses after they had been incurred. In the case at hand, this Court does not have a copy of any plan before it and, even if it did, the issues in Alday, *supra,* do not involve a situation in which a benefit was vested as in the case at hand. In this case, each Plaintiff has done what he or she was required to do in order to have a vested right in this benefit, and once that benefit has vested, it cannot be taken away.

In the case of Williams v. Wright, Judge Edenfield granted summary judgment to the defendant and was then reversed in part by the Eleventh Circuit. Williams v. Wright, 927 F.2d 1540 (11th Cir. 1991), Thereafter, the case was tried before Judge Nangle and was decided in a bench trial. On page 1397 referred to by the Defendants, Judge Nangle specifically held that even if the defendant had reserved the right, "it

5

can only exercise the right prior to the time to which the benefits become vested in the employee". Williams v. Wright, 783 F.Supp. 1392 (S.D. Ga. 1992), is likewise distinguishable. There, Judge Nagle held that an employer could bind itself in an ERISA Welfare plan. Judge Nagle held that it required a consideration of the relevant extrinsic evidence and the parties' cause of action. When the employees have fulfilled their part of the bargain, the Defendants cannot renege on the deal – that is to change the agreement after the benefits have been vested. To allow such would be to hold that the contract that University had with its employees was illusory or void from the beginning and a fraud.

On pages 4-5 of their brief, Defendants fail to recognize the significance of M&G Polymers USA, LLC v. Tackett, 574 U.S. 427 (2015). There, the Supreme Court of the United States held that in construing these plans the courts must adopt and construe such plant consistent with general contract law. In this case, there was a contract that each of the plaintiffs who were hired prior to January 1, 2005 and who completed 30 years or more of continuous uninterrupted service with University Hospital had a vested right to a free Medigap policy for life at the time he or she reached Medicare age (65 years). Applying ordinary principles of contract law, once benefits are vested, such as here, these Defendants cannot renege on the bet after vesting. Under Georgia law an illusory promise exists when a condition of a contract is completely within the control of the promisor. To adopt the Defendants' position

would mean that the promise was nothing but an intentional misrepresentation from the outset.

**2.     Plaintiffs' breach of fiduciary claim under ERISA, Sec. 502(a)(3) does not fail.**

These Defendants misconstrue what occurred in <u>Jones v. American General Life & Accident Ins. Co.</u>, 370 F.3d 1065 (11th Cir. 2004). There, the Plaintiff brought Count 1 under ERISA, Sec. 502(a)(1)(B), and as an alternative, pled a claim under Sec. 502(a)(3). The Plaintiffs in <u>Jones</u> who were represented by the author of this brief never conceded that ERISA, Sec. 502(a)(1)(B) did not provide them with a remedy. On a motion for summary judgment, Judge Moore granted the motion against the Jones plaintiffs as to both counts and, on appeal, the 11th Circuit held that based upon the evidence before the Court that there was an ERISA Sec. 502(a)(3) that survived and, as a result thereof, those <u>Jones</u> plaintiffs received the benefits they were seeking. *See*, District Court opinion in <u>Jones v. American General Life & Accident Ins. Co.</u>, 2003 Westlaw 22282607 (S.D. Ga. 2003), which was reversed at 370 F.3d 1065 (11th Cir. 1004).

**3.     Plaintiffs were entitled to a COBRA notice.**

On page 8 of their brief, Defendants state that a participant must lose health coverage as a result of a qualifying event to trigger COBRA rights, citing 26 C.F.R. 54.4980B-4. A reading of that regulations states that a qualifying event is an event

7

that satisfied paragraph (b),(c) and (d) of 26 C.F.R. 54.4980B-4. Each year each of these retirees were allowed to modify their coverage during open enrollment and could select additional benefits such as Part D (Drug benefits) at certain levels or go to a Medicare Advantage plan, Part C of XVIII of the Social Security Act. Each Plaintiff, during yearly open enrollment, has met the qualifications under 26 C.F.R. 54.4980B-4(b)(5). Under 26 C.F.R. 54.4980B-4(c), to lose coverage means to cease to be covered under the <u>same terms and conditions</u> in effect immediately before the qualifying event. Medicare Advantage plans (Part C) and Medicare plans (Parts A and B) have differences in their terms and conditions. Unlike traditional Medicare, which allows beneficiaries to receive care from almost any provider, Medicare Advantage plans typically have limited provider networks. (HMOs or PPOs). <u>United States v. Aetna, Inc.</u>, 240 F.Supp.3d 1 (2017). The plan that was in effect prior to switching retirees to the Aetna Medicare Advantage Plan was subject to COBRA since the terms and conditions of a Medicare Advantage Plan are substantially different than traditional Medicare and Medigap.

The Plaintiffs who were switched from a Medigap policy to a Medicare Advantage Plan were entitled to a COBRA notice. These Defendants knew that there is a substantial difference between a Medigap policy and a Medicare Advantage policy. Telling the Plaintiffs that the only way they could keep their free-for-life benefit was to go to a Medicare Advantage plan was a breach of their fiduciary duty

8

to these retirees and has had the effect of at time placing retirees in a position that they had to go out of network to receive medical treatment. Defendants obviously did this in order to save money. The Mercer Studies had shown that the Defendants were able to save approximately $70 per person by wrongfully telling individuals that if they wanted to keep their coverage, they had to go into a Medicare Advantage plan. The MERSA studies show that this was done to save Piedmont over $11 million. Now Piedmont wants to break its promise in total in order to save approximately $27,000,000.

      The Aetna Medicare Advantage Plan is a managed care plan which limits a plaintiff to a network, requires approval prior to being treated by a specialist, and can have disastrous effects upon those plaintiffs who have to go "out of network". At the same time, for 20 individuals, University allowed them to remain with their Medigap policy when they raised this issue. For the reasons stated in previous briefs, for those Plaintiffs who were improperly told that they had to go to a Medicare Advantage Plan, COBRA notices should have been sent to all those employees who were placed into a Medicare Advantage Plan so that they could have elected to keep their Medigap policy. *See*, Examples 1, 2, 3, 4, and 5 under 26 C.F.R. 54.4980B-4. In this case, the Plan Administrator owed a fiduciary duty to be honest and truthful in dealing with participants. <u>Jones v. American General Life and Accident</u>, *supra*. If twenty (20) of the Plaintiffs who raised this issue were allowed to keep the free Medigap coverage

9

under United Healthcare, why weren't the remainder allowed to do so? The Defendants have yet to tell this Court why it did not inform the remaining Plaintiffs that they were permitted to do so.

## CONCLUSION

At this stage of this case, this Court does not have before it the plan documents and summary plan documents upon which Defendants rely for their defense, nor does it have any documents relating to the creation of this program for a free Medigap program for retirees or documents showing University's intent in creating this benefit. Since sometime prior to January 1, 2005, this free Medigap policy eliminated, none of those documents are before the Court that would help in determining the intent of University in creating and then ending this benefit. For the reasons stated herein, Plaintiffs respectfully request that the Court deny the Motion to Dismiss filed by University Hospital and Piedmont.

This 27th day of December, 2024.

/s/John B. Long
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

/s/Thomas W. Tucker
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs

OF COUNSEL:

TUCKER LONG, P.C.
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA  30903
(706) 722-0771
(706) 722-7028 Fax
jlong@tuckerlong.com
ttucker@tuckerlong.com

## **CERTIFICATE OF SERVICE**

This is to certify that on this date, the foregoing Brief was filed with the Clerk of Court in accordance with ECF rules using the CM/ECF system and was served electronically upon counsel for the other parties:

Emily E. Friedman, Esq.
Colin D. Delaney, Esq.
Smith Gambrell & Russell, LLP
1105 W. Peachtree Street, NE
Suite 1000
Atlanta, GA  30309
ewasmuth@sgrlaw.com
cdelaney@sgrlaw.com


Troy A. Lanier, Esq.
Troy Lanier Law
430 Ellis Street
Augusta, GA 30901
tlanier@tlanier.law

This 27th day of December, 2024.


/s/John B. Long
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200