IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
ROBERT M. TAYLOR, III, et al.,   *
                                 *
     Plaintiffs,                 *
                                 *
     v.                          *    CV 124-019
                                 *
PIEDMONT HEALTHCARE, INC. and    *
UNIVERSITY HEALTH SERVICES,      *
INC.,                            *
                                 *
     Defendants.                 *
                                 *
```

**O R D E R**

Presently pending before the Court is Defendants' motion to dismiss. (Doc. 38.) For the following reasons, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND**

The relevant procedural background is laid out in the Court's August 29, 2024 Order. (See Doc. 36, at 2-4.) At the Court's instruction, Plaintiffs filed a second amended complaint (the "Complaint") on September 24, 2024. (Doc. 37.) The Court recites the relevant facts from there.

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, and jurisdiction is proper under 28 U.S.C. § 1331. (Id. at 3.) The 215 Plaintiffs

are former employees of Defendant University Health Services ("University"). (Id. at 5.) Defendant Piedmont Healthcare, Inc. ("Piedmont") entered an agreement with University to take over operations of the hospital in Augusta, Georgia and assumed the obligations of University, including contractual and ERISA obligations to current and former employees. (Id.)

Each Plaintiff employed by University was told by management that if they were employed before January 1, 2005 and had thirty or more years of continuous service, when he or she reached Medicare eligibility age, a Medicare Supplement or Medigap policy would be provided to them through United Healthcare free of charge for life (the "Alleged Benefit"). (Id.) Plaintiffs were furnished with written documents stating the same. (Id. at 5-6.) University employees acted as fiduciaries in furnishing these documents and making these written and oral promises, and they referred to the Alleged Benefit as a "hidden paycheck." (Id. at 6.) The Alleged Benefit was a substantial incentive and consideration for Plaintiffs to continue work until they qualified for the benefit. (Id. at 7.) Each of the Plaintiffs relied on the promise of the Alleged Benefit in their financial planning. (Id.)

When Piedmont took over the operation of University, it assumed all of University's liabilities and obligations, including its obligation to provide the Alleged Benefit. (Id.) During University and Piedmont's negotiations, University informed

2

employees, retirees, and their spouses that contrary to prior promises, if they wanted to continue with the Alleged Benefit, they would have to convert to a Medicare Advantage Plan. (<u>Id.</u> at 9.) After Piedmont took over, it notified retirees in a letter dated January 24, 2023 (the "Letter") that it was not obligated to provide the Alleged Benefit, but it would voluntarily continue to provide it at that time. (<u>Id.</u> at 7-8.) The Letter created uncertainty for the Plaintiffs, so they need clarification of their rights to future benefits as allowed by 29 U.S.C. § 1132(a)(1)(B). (<u>Id.</u> at 8.) There were misrepresentations made in informing individuals they had to enroll in a Medicare Advantage Plan to continue with free coverage, and several Plaintiffs relied on these statements to their detriment. (<u>Id.</u> at 9.)

When former employees received knowledge of these changes, a group met with then-Chief Executive Officer of University, James Davis, who agreed that despite what had been stated, employees could remain with United Healthcare and keep their Alleged Benefit as it existed. (<u>Id.</u> at 10-11.) Mr. Davis was acting as a fiduciary under ERISA when he made this promise. (<u>Id.</u>)

Plaintiffs bring three claims against Defendants: Count I – Vested Benefits under 29 U.S.C. § 1132(a)(1)(B) and to Clarify Plaintiffs' Rights to Future Benefits; Count II – Breach of Fiduciary Duty and Equitable Relief under 29 U.S.C. § 1132(a)(3);

3

and Count III - Damages in Violation of COBRA under 29 U.S.C. § 1161-1168 as Permitted by 29 U.S.C. § 1132(c). (Id. at 12-18.)

Defendants move to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). (Doc. 38.) Plaintiffs oppose the motion (Doc. 41), Defendants replied (Doc. 43), Plaintiffs responded (Doc. 45), Defendants replied (Doc. 47), and Plaintiffs responded again (Doc. 49). Thus, the motion has been thoroughly briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a

4

cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

The Court considers Defendants' arguments to dismiss for each Count.

**A. Count I – Claim for Vested Benefits under 29 U.S.C. § 1332(a)(1)(B) and to Clarify Rights to Future Benefits**

Count I alleges each Plaintiff is entitled to receive the Alleged Benefit as promised by Defendants, and each Plaintiff is also entitled to clarification of their future benefits. (Doc. 37, at 13.) Defendants argue Count I fails because it does not allege the required elements for such a claim. (Doc. 38, at 7-

8.)  They argue that under ERISA § 502(a)(1)(B)[1], Plaintiffs must allege and identify the plan or contractual terms that entitle them to the relief sought, and Plaintiffs' contention that they were promised the Alleged Benefit is not supported by the documents attached to their Complaint.  (Id. at 7.)  As such, they argue Plaintiffs are not entitled to a plausible inference and have failed to state a claim.  (Id. at 10.)  In response, Plaintiffs argue that just because the limited documents they have do not include "for life" does not end the inquiry because this is not the complete plan.  (Doc. 41, at 9.)  They assert Defendants have all of the plan documents and without them being produced, the Court should not dismiss Plaintiffs' claim.  (Id.)  Plaintiffs also argue Defendants must have provided the necessary documents to Mercer for them to create an actuarial valuation report, and the documents must have shown there was an obligation to provide the insurance for life based on Mercer's estimated value.  (Id. at 9-10.)

"Section 502(a)(1)(B) empowers ERISA participants and beneficiaries to bring a civil action in order to recover benefits, enforce rights to benefits, or clarify rights to future benefits due under the terms of an ERISA-governed welfare benefit plan." Jones v. Am. Gen. Life & Acc. Ins., 370 F.3d 1065, 1069 (11th Cir.

---

[1] ERISA § 502(a)(1)(B) and 29 U.S.C. § 1332(a)(1)(B) refer to the same law, and the Court uses them interchangeably.

6

2004) (citing 29 U.S.C. § 1132(a)(1)(B)). "The remedies authorized by § 502(a)(1)(B) are 'akin to common law breach of contract causes of action.'" Klaas v. Allstate Ins., 21 F.4th 759, 766 (11th Cir. 2021) (citation omitted). The Eleventh Circuit applies "the doctrine of *contra proferentem* to resolve ambiguities in ERISA-governed plans," so "an ERISA plaintiff is generally not required to demonstrate his entitlement to benefits in clear and express language in the relevant provisions of his plan in order to make out a Section 502(a)(1)(B) 'breach of contract' claim." Jones, 370 F.3d at 1070 (citation omitted). However, "an ERISA plaintiff can only succeed on a Section 502(a)(1)(B) claim if he can establish that the plan at issue is at least ambiguous with respect to the relevant benefits for which he claims entitlement." Id.

At the motion to dismiss stage, the Court looks to the well pleaded allegations to determine whether Plaintiffs stated a claim. Plaintiffs allege University offered that its employees would be given free, for life, a Medicare Supplement Policy through United Healthcare. (Doc. 37, at 13.) Although Plaintiffs admit the documents attached to the Complaint do not include "for life," the Court finds Plaintiffs' allegations, accepted as true, state a claim at this stage in the proceedings. (See Doc. 41, at 9.) While Plaintiffs must provide evidence of express language in a provision of a plan to support that Defendants offered the benefit "for life," requiring that at the pleadings stage is premature and

7

such determination is better reserved for summary judgment. While the Court acknowledges Defendants' reference to the Supreme Court's holding that vested benefits are "not to be inferred lightly" and that "the intent to vest must be found in the plan documents and must be stated in clear express language," the Court again finds this relevant for the motion for summary judgment stage. (See Doc. 43, at 7); M & G Polymers USA, LLC v. Tackett, 574 U.S. 427, 441 (2015) (citation omitted). Plaintiffs' allegations, accepted as true, provide that Defendants offered the Alleged Benefit, and whether there is a writing and clear express language supporting this claim will be determined at a later point. Thus, Defendants' motion to dismiss Count I is **DENIED**.

**B. Count II - Breach of Fiduciary Duty and Equitable Relief under 29 U.S.C. § 1132(a)(3)**

Count II alleges Defendants owe a fiduciary duty to administer the Alleged Benefit to Plaintiffs in accordance with the promises they made to their employees as part of their retention plan. (Doc. 37, at 14.) Plaintiffs allege Defendants breached their fiduciary duties by leaving Plaintiffs in uncertainty of knowing whether they will have the Alleged Benefit for life and failing to accurately communicate benefits to them (Id. at 14-16.) Defendants move to dismiss because Plaintiffs' claim is based on the erroneous assumption that the retiree medical benefits are vested, and an alleged threat to change or terminate the retiree

8

medical program in the future is not an actionable ERISA fiduciary breach. (Doc. 38, at 11.) Plaintiffs argue they sufficiently alleged breach of fiduciary claims and they should be able to pursue alternative claims under § 1132(a)(1)(B) and § 1132(a)(3) until discovery is completed and they can decide which to base their claims on. (Doc. 41, at 11-12.) But Plaintiffs do not respond to Defendants' arguments as to why the Complaint fails to plausibly plead a breach of fiduciary duty claim under ERISA.

The Supreme Court has held "an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations." Beck v. PACE Int'l Union, 551 U.S. 96, 101 (2007) (citations omitted); see also Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (holding that when employees adopt, modify, or terminate plans, they do not act as fiduciaries and are free from liability under ERISA). A motion to dismiss "should be granted 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Bowers v. Am. Heart Ass'n., 513 F. Supp. 2d 1364, 1369 (N.D. Ga. 2007) (citation omitted). Even accepting Plaintiffs' allegations as true, Count II fails because employees that act to adopt, modify, or terminate the Alleged Benefit are not fiduciaries under ERISA.

Further, the case law is clear "that an ERISA plaintiff who has an adequate remedy under Section 502(a)(1)(B) cannot

alternatively plead and proceed under Section 502(a)(3)." <u>Ogden v. Blue Bell Creameries U.S.A., Inc.</u>, 348 F.3d 1284, 1287 (11th Cir. 2003) (citation omitted). Plaintiffs argue they can assert both claims as alternative claims and acknowledge they will have to decide a path after discovery is completed. (Doc. 41, at 12.) However, they provide no case law for this contention, and the Court finds this does not overcome the clear Eleventh Circuit precedent that states they cannot alternatively plead in this manner. <u>See</u> <u>Ogden</u>, 348 F.3d at 1287. Since Plaintiffs' claim under 502(a)(1)(B) is proceeding, the Court finds it improper for them to also pursue a claim under 502(a)(3) based on the same conduct. For both of these reasons, Defendants' motion to dismiss Count II is **GRANTED**.

**C. Count III - COBRA Violation under 29 U.S.C. § 1161-1168 as Permitted by 28 U.S.C. § 1132(c)**

Count III alleges Defendants failed to inform Plaintiffs they had rights under COBRA to keep Medigap coverage with United and switching coverage to Aetna was a qualifying event under § 1163. (Doc. 37, at 18.) Defendants argue this claim also fails because a participant is only entitled to COBRA continuation coverage when there is a "qualifying event" as defined by 29 U.S.C. § 1163. (Doc. 38, at 16.) Defendants assert the change in insurance carriers from United Healthcare to Aetna was caused by University's decision to modify the benefit program, which is not a qualifying

10

event.  (Id.)  Plaintiffs argue that under the Social Security Act, 42 U.S.C. § 1395, retired individuals may change their level of coverage every year, so a qualifying event for a Medicare eligible person can occur more than once.  (Doc. 41, at 13.)

The Court finds Plaintiffs' interpretation of COBRA continuation coverage is unfounded.  Qualifying event is defined under § 1163 as six occurrences that, but for COBRA continuation coverage, would cause a qualified individual to lose medical benefits under an ERISA governed plan.  See Karp v. Guardian Life Ins. Co. of Am., 456 F. Supp. 2d 1375, 1380 (S.D. Ga.), aff'd, 199 F. App'x 870 (11th Cir. 2006) (citing 29 U.S.C. § 1163).  The six occurrences include:

> **(1)** The death of the covered employee.
> **(2)** The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
> **(3)** The divorce or legal separation of the covered employee from the employee's spouse.
> **(4)** The covered employee becoming entitled to benefits under title XVIII of the Social Security Act.
> **(5)** A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
> **(6)** A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

29 U.S.C. § 1163. "A 'qualifying event' . . . must be an occurrence that would result in the loss of medical benefits if it were not for the continuation of coverage under COBRA." Karp, 456 F. Supp. 2d at 1381 (citing 29 U.S.C. § 1163).  The Complaint alleges

11

switching coverage to Aetna was a qualifying event. (Doc. 37, at 18.) However, switching coverage does not fall under any of the six enumerated qualifying events, so no COBRA notice was required. Plaintiffs try to argue that being able to change the level of their coverage under the Social Security Act is considered a qualifying event, but this is not aligned with what they allege in the Complaint, and they provide no support for this allegation. (Doc. 41, at 13-14.) Since Plaintiffs fail to allege a qualifying event as defined by § 1163, the Court finds they failed to state a claim for a COBRA violation, and Defendants' motion to dismiss Count III is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 38) is **GRANTED IN PART AND DENIED IN PART**. Counts II and III are dismissed, and Count I shall proceed.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of September, 2025.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA