IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ROBERT M. TAYLOR, III, et al. | ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) |
| VS. | ) CASE NO. 1:24-cv-00019-JRH-BKE |
| | ) |
| UNIVERSITY HEALTH SERVICES, INC. | ) |
| and PIEDMONT HEALTHCARE, INC., | ) |
| | ) |
| DEFENDANTS | ) |

### AFFIDAVIT OF EDWARD L. BURR

State of Georgia    )

County of Richmond )

Personally appeared before the undersigned attesting authority, duly authorized to administer oaths, EDWARD L. BURR, who after first being duly sworn and based upon his personal knowledge, states:

1. That this affidavit is being made in support of the fact that certain former employees of University Health Services, Inc., who were employed prior to January 1, 2005 and had 30 more years of continuous service with University Health Services, Inc. (now Piedmont Augusta), would be entitled as part of their defined healthcare plan the free for life Medigap supplement policy that was promised to them as part of the retention plan and as part of their defined benefit plan.

2. That Affiant earned a Bachelor of Arts degree from Tulane University in 1976 and thereafter received his Juris Doctorate from Harvard Law School. Affiant served on active duty for six years with the United States Army and is a retired United States Army Reserve office. Affiant joined the University Health Care System in 1987 and continued to work as its Chief

1

Administrative Officer and Senior Vice President for Legal and Regulatory Affairs until he retired at the time of the agreement with Piedmont and its affiliates.

     3.    That this affidavit is also being made in support of a Motion to Add as Additional Plaintiffs in this action those former employees who were hired prior to January 1, 2005 and who had 30 or more years of continuous service with University Health Services, Inc. or its successors and who after meeting those requirements reached Medicare age (65) subsequent to the end of 2023.

     4.    That Affiant is familiar with the fact that Piedmont is taking the position with former employees of University Health Services, Inc. who were employed prior to January 1, 2005 and had 30 or more years of continuous service that this is not an obligation under the University Health Services, Inc. Welfare Plan under ERISA. Piedmont is now taking the position that these benefits will not be available to Retirees who were employed prior to January 1, 2005 and have 30 or more years of continuous services if they are not Medicare-eligible by the end of 2023 as shown by Ex. A attached hereto.

     5.    That while Affiant was employed at University Health Services, Inc., University Health Services, Inc. used two (2) audit firms, Ernst and Young and Dixon Hughes, which in 2022 became Forvis Mazars. The agreement to provide employees hired prior to January 1, 2005 who had 30 or more years of continuous service was designed to be part of a defined benefit healthcare plan, all as set forth in the notes to financial statements attached and as provided on page 39 of the Notes to the Consolidated Plan of Piedmont Healthcare, Inc. and affiliates attached as Exhibit B. The previously audited financial statement should show similar notes since this employee benefit was unfunded. The fact that such notes refer to this benefit as part of a healthcare benefit plan supports the position that this plan was intended to be a benefit for life.

6. That as Senior Vice President and Chief Administrative Officer, Affiant is familiar with the employee retention program which provided that, if employees who were employed prior to January 1, 2005 and had 30 years of continuous service, they in return would receive a Medicare supplemental policy for the remainder of their lives free of charge. This was a contractual obligation of University Health Services, Inc. and this benefit was routinely referred to in writing by University Health Services, Inc. as a 'hidden paycheck".

7. That as Senior Vice President and Chief Administrative Officer, Affiant was always concerned about any type of remuneration to any person or organization, even if without any criminal intent, that had the effect of costing the Federal government federal funds under any government funded program, including Medicare or Medicaid, could result in severe civil penalties and other consequences imposed by the Office of the Inspector General of the Department of Health and Human Services for up to $5,000 per violation of 42 U.S.C. 1320a-7a(a)(5).

8. That the payments of these "hidden paycheck" benefits were in Affiant's opinion contractual payments to retired employees and thus were not remuneration prohibited by Federal statute, 42 U.S.C. § 1320a-7a(a)(5) and were not subject to the civil penalties 42 U.S.C. 1320a-7a(a)(5).

9. That in Affiant's opinion the remuneration being provided to these retirees by University Health Services, Inc. in providing free for life Medicare supplemental policies were not improper remunerations but were the fulfilling of contractual obligations.

10. That Affiant, while meeting the requirements of having been employed prior to January 1, 2005 by University Health Services, Inc. and having more than 30 years of continuous service, is not making any claim in that he is retired from the United States Army Reserve and receives TriCare benefits for himself and his spouse.

3

Administrative Officer and Senior Vice President for Legal and Regulatory Affairs until he retired at the time of the agreement with Piedmont and its affiliates.

3. That this affidavit is also being made in support of a Motion to Add as Additional Plaintiffs in this action those former employees who were hired prior to January 1, 2005 and who had 30 or more years of continuous service with University Health Services, Inc. or its successors and who after meeting those requirements reached Medicare age (65) subsequent to the end of 2023.

4. That Affiant is familiar with the fact that Piedmont is taking the position with former employees of University Health Services, Inc. who were employed prior to January 1, 2005 and had 30 or more years of continuous service that this is not an obligation under the University Health Services, Inc. Welfare Plan under ERISA. Piedmont is now taking the position that these benefits will not be available to Retirees who were employed prior to January 1, 2005 and have 30 or more years of continuous services if they are not Medicare-eligible by the end of 2023 as shown by Ex. A attached hereto.

5. That while Affiant was employed at University Health Services, Inc., University Health Services, Inc. used two (2) audit firms, Earnst and Young and Dixon Hughes, which in 2022 became Forvis Mazars. The agreement to provide employees hired prior to January 1, 2005 who had 30 or more years of continuous service was designed to be part of a defined benefit healthcare plan, all as set forth in the notes to financial statements attached and as provided on page 39 of the Notes to the Consolidated Plan of Piedmont Healthcare, Inc. and affiliates attached as Exhibit B. The previously audited financial statement should show similar notes since this employee benefit was unfunded. The fact that such notes refer to this benefit as part of a healthcare benefit plan supports the position that this plan was intended to be a benefit for life.

This \_\_6th\_\_ day of \_\_\_November\_\_\_, 2025.

Sworn to and subscribed before me
this \_\_6th\_\_ day of \_\_November\_\_, 2025.

\_\_\_Sandra O. Williams\_\_\_
Notary Public, Richmond County,
State of Georgia
My Commission Expires:
_____

My Commission Expires December 27, 2027

_____
EDWARD L. BURR

4



To: University Health / Piedmont Augusta Retirees
From: Piedmont Healthcare and Head Capital
Date: Dec. 8, 2022
Subject: An Update Regarding Retiree Benefits

Thank you to all who attended one of our recent Retiree Forums. These meetings are helpful as we continue our dialogue and seek to support those who dedicated a significant part of their career to our organization.

In light of our conversations and at this time, we will continue to administer post-65 retiree medical, dental and vision benefits in the same manner as such benefits are currently administered with the exception that subsidies will only be available to retirees who are Medicare-eligible by the end of 2023. As it does with all benefit plans, Piedmont will continue to review these benefits regularly and reserves all rights to make future changes.

Again, thank you for your service to University Health, now Piedmont Augusta.



EXHIBIT A

# Piedmont

## Consolidated Financial Statements

PIEDMONT HEALTHCARE, INC. AND AFFILIATES
Notes to Consolidated Financial Statements
June 30, 2024 and 2023

Estimated future benefit payments for the Consolidated plan are estimated to approximate $442 million during the year ending June 30, 2025, with no payments thereafter due to the plan termination.

(c) *Health Care Plan*

The Augusta Entities sponsor a defined benefit health care plan that provides postretirement medical benefits to full-time employees hired prior to January 1, 2005, who have worked 10 years and attained age 55 while in service with the Augusta Entities. Effective January 1, 2011, the plan requires the employee to work 20 years and attain the age of 60 while in service with the Augusta Entities. The plan is contributory with retiree contributions adjusted annually and contains other cost-sharing features such as deductibles and coinsurance. The accounting for the plan anticipates future cost-sharing changes to the plan that are consistent with the Augusta Entities' expressed intent to increase the retiree contribution rate annually for the expected increases in the health trend rates. PHC's policy is to fund benefits as they are actually submitted for payment by plan participants, rather than build a segregated reserve to finance future benefit payments.

As of June 30, 2024, and 2023, approximately $457,000 and $586,000, respectively, is recorded in accounts payable and other accrued expenses and approximately $20,186,000 and $19,665,000, respectively, is recorded in other long-term liabilities representing the unfunded portion of this plan.

(d) *Deferred Compensation Plans*

PHC also offers two nonqualified deferred compensation plans, which are available to certain highly compensated PMCC and PHIP employees. These plans permit such employees to defer the receipt and taxation of all or a portion of their salary until future years. The deferred compensation is available for distribution to employees upon the election by the employee, provided the distribution election with respect to the deferred amounts has been made for a minimum of one year prior to the date of distribution.

All deferrals are held as part of PHC's general assets and are subject to the claims of PHC's general creditors. Employees' rights to the payment of benefits under these plans are equal to those of general and unsecured creditors of PHC. PHC has no liability for losses under the deferred compensation plans.

The amounts recorded for the deferred compensation plans are approximately $140,959,000 and $111,826,000 at June 30, 2024 and 2023, respectively, and are recorded in offsetting amounts within other long-term liabilities and other assets in the accompanying consolidated balance sheets.

CRHS implemented a 457(b) plan for certain highly compensated senior employees and physicians. The plan is funded solely by employee contributions. The assets of the plan are the legal assets of CRHS until they are distributed to participants, and therefore, the plan assets and corresponding liability are reported in the accompanying consolidated balance sheets. Plan assets, at fair value, at June 30, 2024 and 2023 totaled approximately $5,191,000 and $5,741,000, respectively, and are reflected in other assets with an offsetting liability in other long-term liabilities on the accompanying consolidated balance sheets.

39 (Continued)



EXHIBIT B

## CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing Affidavit of Edward L. Burr was filed with the Clerk of Court in accordance with ECF rules using the CM/ECF system and was served electronically upon counsel for the other parties or by placing a copy of same in the United States Mail with adequate postage thereon, properly addressed to:

Emily E. Friedman, Esq.
Colin D. Delaney, Esq.
Smith Gambrell & Russell, LLP
1105 W. Peachtree Street, NE
Suite 1000
Atlanta, GA  30309
cdelaney@sgrlaw.com
efriedman@sgrlaw.com


Troy A. Lanier
Troy Lanier Law
430 Ellis Street
Augusta, GA  30901
tlanier@tlanierlaw.com

This 10th day of November, 2025.


/s/*John B. Long*
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

/s/*Thomas W. Tucker*
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs